IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYSTEM DEVELOPMENT INTEGRATION, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 09-C-4008 |
| COMPUTER SCIENCES CORPORATION, | § § § | |
| Defendant. | § | |

**COMPUTER SCIENCES CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

Thomas C. Cronin
State Bar No. 6204065

**CRONIN & CO., LTD.**
33 N. Dearborn St., Suite 2350
Chicago, Illinois 60602
Telephone: (312) 201-7100
Telecopier: (312) 201-7101

— AND —

Charles W. Gameros, Jr., P.C.
Texas State Bar No. 00796596
Jennifer N. Rauch
Texas State Bar No. 24033108

**HOGE & GAMEROS, L.L.P.**
4514 Cole Ave., Suite 1500
Dallas, Texas 75205
Telephone: (214) 765-6002
Telecopier: (214) 292-8556

**ATTORNEYS FOR COMPUTER SCIENCES CORPORATION**

## INTRODUCTION

SDI's Opposition to Defendant's Motion for Summary Judgment (the "Response") is largely an exercise in obfuscation and misdirection.

During the 30(b)(6) deposition of SDI through its president, Mr. Gupta, the following exchange took place:

> Q: [by Mr. Gameros] "If I say "Howdy partner" to you, does that make us partners?
> A: [by Mr. Gupta] If you say "Howdy partner"?
> Q: Uh-huh.
> A: No, that does not make us partners."[1]

Of course, Mr. Gupta is right; there is nothing about using a word that magically creates a fiduciary relationship. Yet, in the Response, SDI points to a few slides from PowerPoint presentations (ignoring the rest of the slide which do suit SDI's litigation posture) and e-mails (without regard to the disclaimer on every one), sees the word "partner" (usually a verb, and never the word partnership) and races to the conclusion that that must have been the relationship it had with CSC, despite there being no agreement (written or otherwise) and SDI having, in fact, repeatedly rejected the creation of an agreement. In its haste, SDI ignores the other basic, requirements of a partnership, but that is just the start of SDI's problems.

At its core, the Response never comes to grips with some obvious, basic facts.

- There is no executed agreement of *any kind between CSC and SDI* in evidence;
- There being no agreements between CSC and SDI, there is no agreement regarding choice of law (of Pennsylvania) governing such a phantom agreement;
- There are no e-mails from any employee at CSC to any employee at SDI without a disclaimer that precludes *"bind[ing] CSC to any order or other contract unless pursuant to explicit written agreement"*; and

---

[1] (Depo of SDI 30(b)(6) representative at pp. 44 – 45, ll. 23 – 24, 1 – 3).

- SDI *rejected both written sub contracts* it was offered – not because it already had a deal as its lawyers now try to urge – but because SDI was not satisfied with the money it would receive *if it worked with CSC on the Exelon Contract*.

The evidence in this case is simple. No matter what CSC employees may have believed or wanted to believe, and no matter what story SDI would like to construct in hindsight, it was SDI who rejected CSC in September of 2008. There is no agreement and all of SDI's wishing and machinations cannot make it so. Plaintiff's arguments to the contrary are futile, and Defendant's motion should be granted.

## REPLY POINTS

### A. Under Proper Choice of Law Analysis, Illinois, Not Pennsylvania Law Applies.

SDI's attempt to change the course of, and its theory of, the case now, after discovery has closed and after CSC filed its then case-dispositive summary judgment motion, by seeking to apply the law of the state of Pennsylvania is unavailing. Law of the case as stated by SDI and Illinois choice of law principals prevents such an application, and the Court should reject SDI's re-tooling of the case. SDI's choice of filing in Chicago, both versions of its Complaint, and its admissions of CSC's Statement of Facts wherein it concedes jurisdiction and, tellingly, venue, also weigh in favor of the rejection of Pennsylvania law.

#### 1. SDI may not bootstrap its way to Pennsylvania.

Contrary to SDI's new theory of its case – that the parties are somehow bound by a choice of law provision of an agreement that no party avers was fully executed or performed – SDI cannot hinge a choice of law to determination on an unexecuted agreement (if it ever existed). *See, e.g., Ramco Indus., Inc. v. PCL-Harbert*, No. 92 C 3586, 1992 WL 198942 at n. 6 (N.D. Ill. Aug. 12, 1992) ("PCL-Harbert also points out that the written agreement, had it been executed, would have contained a Colorado choice of law provision. This carries little weight because the agreement remains unexecuted."); *see also Kafka v. Bellevue Corp.*, No. 90 C 6709,

1991 WL 49619, *4 (N.D. Ill. Apr. 2, 1991) ("Here, defendants rely on two forum selection clauses contained in the option agreement and the right to sell and purchase agreement. However, neither of these two agreements is properly before the court. The copies attached to the defendants' motion are unexecuted. Defendants have not established a foundation upon which the court may properly consider these documents. Nor have the defendants provided affidavits relating to the location where the agreements were negotiated and executed.").[2]

Similarly futile is SDI's assertion that the terms of the Exelon Contract – a contract to which SDI is neither a party nor signatory – should govern, given that (1) SDI has admitted that it was not a party to the Exelon Contract, and (2) the Exelon Contract neither expressly governs nor dictates the terms of any alleged relationship between SDI and CSC, let alone its dispute resolution. (SOF ¶14). SDI is not mentioned in the body of the Exelon Contract at all in fact, and only shows up on a schedule to the Exelon Contract wherein SDI is listed not as a party or a "partner," but as an "approved subcontractor." (SOF ¶14).

CSC disputes that <u>any</u> provision of an unexecuted contract could be enforced or govern the procedures and substance of this case, but at a minimum, SDI cannot pick and choose which terms it wants applied and which it does not. *See International Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, No. 04 C 1190, 2007 WL 951943 at *5 (N.D. Ill. March 27, 2007) ("The principle that a party cannot use its relationship with a contract to allege liability but then disavow the arbitration provision in the contract is consistent with the notion that 'the doctrine of estoppel prevents a party from having it both ways.'") (citations omitted). Here, SDI wants to apply the choice of law provision of the unexecuted subcontract (or other contracts and

---

[2] In fact, SDI does not dispute that there is no written fully executed agreement or agreements between itself and CSC. (SOF ¶¶ 16 - 24). A simple test here is apropos. Despite all of its bluster, where is SDI's copy of any written agreement bearing both CSC's and SDI's signatures with a choice of law provision stating that Pennsylvania controls? CSC does not have one. SDI has not produced one. There is not one, and all of the protest and spin in the Response cannot change that simple fact.

---

documents to which SDI is not a party), but ignore the venue and jury demand provisions of that same unexecuted subcontract. This Court should not allow that.

2. **SDI too knows that the law of Illinois applies.**

Putting aside that there is no fully executed agreement dictating the application of Pennsylvania law, SDI itself first initiated this lawsuit in Illinois state court, acknowledges that the alleged agreements were negotiated in Cook County, Illinois, and admits the transactions that SDI asserts gave rise to their claims occurred in Cook County, Illinois.[3] Had SDI truly believed that (i) the terms of the unexecuted subcontract control, and (ii) Pennsylvania law applies, then this case would have been filed in Pennsylvania (state of federal court) and Plaintiff would have not asked for a jury. The fact that SDI instead filed this case in Illinois – seeking to apply, and in fact citing, the law of Illinois – and demanded a jury speaks volumes as to its sincerity in only now changing its entire theory of the case (by asserting Pennsylvania law) in an effort to somehow cling to what it perceives to be a more advantageous choice of law.

3. **Basic choice of law analysis also rejects application of Pennsylvania law.**

Federal courts in diversity cases apply the choice of law rules of the state in which the court sits and this court should apply Illinois choice of law rules to determine which state's substantive law applies to the claims at issue. *Midwest Grain Prods. of Ill. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000). Illinois follows the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (the "RESTATEMENT") in making choice of law determinations. *See Esser v. McIntyre*, 169 Ill.2d 292, 661 N.E.2d 1138, 1141 (Ill. 1996).

In cases like the one *sub judice*, the RESTATEMENT refers courts to either (i) the place of performance and execution or (ii) the most significant relationship test:

---

[3] *See* Plaintiff's Complaint at ¶ 8; Plaintiff's First Amended Complaint at ¶ 8 ("[T]he agreements underlying this action were primarily negotiated in Cook County, Illinois and because the transactions out of which SDI's causes of action arose occurred in Cook County, Illinois. 735 ILCS 5/2-101 and 2-102").

> Under traditional Illinois conflict of laws principles, the law of the place where the contract is performed and executed is applicable in determining the validity, construction and obligations of the contract. Where performance and execution occur in different states, the law of the place of performance governs. Where a contract is to be performed in more than one state, the law of place of execution is controlling. Federal courts applying Illinois law have followed the traditional test, but have noted a trend in Illinois of adopting the most significant contacts test in conflict of laws cases.

*Boise Cascade Home & Land Corp. v. Utilities, Inc.*, 127 Ill.App.3d 4, 468 N.E.2d 442, 448 (Ill. Ct. App. 1984); *see also Esser*, 169 Ill.2d at 298, 661 N.E.2d at 1141 ("When applying the most significant relationship test, a court should consider (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered. The court must look at the contacts of the jurisdictions under these four factors and then evaluate those contacts in light of the policies underlying the laws of those jurisdictions."). The answer to each of these considerations is Illinois; the answer to none of them is Pennsylvania.

With respect to performance and execution, the subcontract was never fully executed (CSC never signed the agreement which SDI rejected through material alteration)[4] but, tellingly, SDI made its unaccepted-counteroffer in Chicago, Illinois, not Pennsylvania. The document SDI signed was signed in Chicago. SDI never performed under it either. (SOF ¶ 27) Moreover, SDI had no offices in Pennsylvania from which it could perform. The majority of the work that was the subject of the alleged partnership and/or subcontractor agreement(s) related to work to be performed in Chicago, Illinois, where Exelon and SDI are headquartered. *See* First Amended

---

[4] *See Finnin v. Bob Lindsay, Inc.*, 366 Ill. App. 3d 546, 549, 852 N.E.2d 446, 449 (Ill. App. Ct. 2006), appeal denied, 222 Ill.2d 570, 861 N.E.2d 654 (Ill. 2006) ("It is well settled that in order to constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer. Under Illinois contract law, an acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offer or before a valid contract is formed."); *Judricks Enters., Ltd. v. Catapillar, Inc.*, 165 F.3d 32, 1998 WL 567946, *2 (7th Cir. 1998) (citing jury instructions, "[r]ejection of an offer to contract leaves the matter as if no offer had been made, and the party rejecting the offer cannot afterwards revive it by tendering acceptance of the offer. After such a rejection, a contract can be made only by a new offer to contract and acceptance.").

Complaint at ¶ 5 ("SDI is a Chicago-based business.") and ¶¶ 10-12 (describing Exelon as headquartered in Chicago). That SDI elected to file in its home territory, Cook County, Illinois and not Pennsylvania, should speak for itself. *See* Plaintiff's First Amended Complaint at ¶ 8.

Similarly, applying the significant relationship test yields the same result. SDI was injured (if at all) in Chicago, Illinois (its principal place of business), not Pennsylvania (where SDI had no offices). SDI and CSC started, and stopped, their negotiations in Chicago, Illinois, not Pennsylvania. Even SDI's much-ballyhooed appearance at the oral presentation to Exelon occurred in Chicago, Illinois, not Pennsylvania. None of the parties are domiciled in Pennsylvania. The relationship between CSC and SDI, whatever it was, was in Illinois and not Pennsylvania. There is no relationship, much less a significant relationship, with this case and Pennsylvania, and this Court should not apply Pennsylvania law.

### B. SDI's Breach of Contract Claim Cannot be Rescued With Pick and Choose Quotations.

#### 1. The Illinois Statute of Frauds bars the contract claim.

As an initial matter, every single e-mail from a CSC employee to any SDI employee in this case bears the clear, unambiguous, disclaimer:

> Regardless of content, this e-mail shall not operate to bind CSC to any order or other contract unless pursuant to explicit written agreement or government initiative expressly permitting the use of e-mail for such purpose. (SOF ¶32).

Yet, despite this unambiguous and ubiquitous disclaimer, SDI persists in the view that it is (as always) free to ignore language it does not care to be bound by in order to pursue what it wants. Respectfully, it has done so at its peril, and nothing in the Response has put the contract claim outside of the Statute of Frauds.

SDI cites but two cases, *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542 (7th Cir. 2005) and *Carl A. Haas Auto Imports v. Lola Cars*, 933 F. Supp. 1381 (N.D.

Ill 1996), to argue that the Illinois Statute of Frauds would not bar its contract claims because they fall under one or more of three exceptions. (Response, p. 10). This is simply not the case.

SDI's reliance on *Trustmark* is somewhat shocking. First, contrary to SDI's citation, *Trustmark* does not deal with equitable estoppel, but promissory estoppel.[5] *Trustmark*, 424 F.3d at 549. Second, the *Trustmark* Court required the plaintiff – as this Court should – to connect the dots. SDI offers no writings with "all requisite essential terms" of the alleged contract in them. *Trustmark*, 424 F.3d at 551. Following *Trustmark*, the lack of those "unequivocal" writings is fatal under Statute of Frauds analysis. *Trustmark*, 424 F.3d at 551 n.2. Affirming the district court's application of the Statute of Frauds, the *Trustmark* Court's admonition is telling here:

> Together, these documents proffered by Trustmark do make one thing clear: the plaintiff is grasping at straws. How it came to be in this unfortunate predicament - a predicament in which it must cobble together a sufficient writing where none exists - is clear as well. It put itself there. As Trustmark's counsel informed us at oral argument, 'reinsurance is something that is often done on a handshake, ... perhaps resulting in more litigation than it should these days.' We may be shocked by the former, but we see first hand the veracity of the latter. Indeed, we dare say, it is quite the understatement. Accordingly, like all those before it, we affirm the district court's finding where a plaintiff has again failed to adduce written evidence sufficient to satisfy the requirements of the statute of frauds. *Trustmark*, 424 F.3d at 551.

It is undisputed that SDI refused the September 10 BAFO *in toto* and demanded its signatures back at the end of September when CSC would not agree to SDI's counter-offer. Like the plaintiff in *Trustmark*, SDI only has itself to blame.

*Carl A. Haas Auto Imports* is little better for SDI. As a practical matter, it too lacks the express elements put forth in the Response. *Carl A. Haas Auto Imports*, 933 F. Supp. at 1387 – 1388. Like *Trustmark*, *Carl A. Haas* requires a writing that sets forth the "agreement's essential terms." *Carl A. Haas Auto Imports*, 933 F. Supp. at 1388. Critically, SDI has not (nay cannot)

---

[5] Though its citation might indicate otherwise, Plaintiff knows the difference. *See* Plaintiff's Reply in Support of Plaintiff's Motion for Leave to File its First Amended Complaint *Instanter* [Dkt. No. 77], p. 5 ("Under Illinois law, promissory estoppel is different than equitable estoppel.").

provide such writings. Without them, the Statute of Frauds bars SDI's claims. Accordingly, summary judgment is appropriate on the breach of subcontract claim by application of the affirmative defense of Statute of Frauds.

### 2. At every turn, SDI rejected CSC's offers and thus doomed its contract claim.

There is no dispute that SDI rejected the September 10 BAFO. Likewise, there is no dispute that SDI countered (and thus rejected) the late September offer from CSC with its own proposal. Aside from side-stepping to Pennsylvania law, the Response does nothing to contradict these basic facts. Moreover, as a matter of simple contract law, SDI's repeated rejections and counters indicated that, if nothing else – and regardless of what CSC employees may have thought – there was no meeting of the minds between SDI and CSC.[6] *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999). SDI's Response includes some selective quotation from, among others Jim Doyle, CSC's a then Vice –President. (Response, p. 9 (citing SAF ¶¶ 31-32)). What SDI does not apprise the Court of is Mr. Doyle's very next answer to the very next question and this is critical because it is the *sina qua non* of a counter-offer:

---

[6] Of course, that makes the basic contract propositions of offer and acceptance all the more critical. SDI's unilateral decision to change fundamental terms of the late September proposal was inadequate to form a subcontract with CSC. *See Finnin v. Bob Lindsay, Inc.*, 366 Ill. App. 3d 546, 549, 852 N.E.2d 446, 449 (Ill. App. Ct. 2006), appeal denied, 222 Ill.2d 570, 861 N.E.2d 654 (Ill. 2006) ("It is well settled that in order to constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer. Under Illinois contract law, an acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offer or before a valid contract is formed."); *Judricks Enters., Ltd. v. Catapillar, Inc.*, 165 F.3d 32, 1998 WL 567946, *2 (7th Cir. 1998) (citing jury instructions, "[r]ejection of an offer to contract leaves the matter as if no offer had been made, and the party rejecting the offer cannot afterwards revive it by tendering acceptance of the offer. After such a rejection, a contract can be made only by a new offer to contract and acceptance.").

> Q: [by Mr. Tabet]   All right. Now, you go on to say that SDI signed the offer, but changed the rate cards; right?
> A: [by Mr. Doyle]   Yeah. They signed the signature page, and then when I got the complete package, the rate card was different.
> (SAF, Ex. 23, p. 239, ll. 17 – 22)

So, it follows, *despite Mr. Doyle's belief*, there was not in fact an agreement on September 23, 24, or anytime. This is so because SDI (i) countered the offer by materially changing the rate card; and (ii) would not agree to what CSC proposed and demanded SDI's signatures back. SDI's other evidence of the alleged agreement includes Ms. Burns' recitation of Mr. Doyle's contacts with SDI around September 23rd and 24th (SAF, Ex 8, pp. 148 – 151), none of which demonstrates personal knowledge on her part or, more importantly, changes SDI's conduct. Respectfully, SDI's direct, unequivocal conduct has eliminated any fact issue as to whether there was an agreement. There was not. Summary judgment is appropriate on the breach of subcontract claim.

**C.    SDI's Tortious Interference Claim is Doomed by its Own Conduct, Not CSC's.**

SDI all but abandons the claim with one page of conclusory analysis in its Response (Response, p. 11). As a practical matter, SDI does not contradict the factual starting points for the Motion, to wit: (i) that SDI had no long term business with Exelon to continue (SOF ¶¶28-30); (ii) that SDI had no basis to expect 15% of Exelon's "IT business" (SOF ¶¶28-31); and (iii) that SDI rescinded its own offer to the IT Specialists because – lacking an agreement with CSC – "their employment would not be required by" SDI (SOF ¶26). The Response is silent as to these critical points. There is no fact issue presented in the Response, and the Court should grant the Motion as to tortious interference.

Instead, the Response – without specific recitation to or any explanation of any evidence at all – asserts that CSC "disparaged SDI and lied to Exelon." (Response, p. 11). That is false. But even if it were true, it would have had no effect on the three basic points SDI needs to maintain its claim. SDI had no relationship to maintain, no basis to expect 15% of Exelon's "IT business," and no desire for a continuing a relationship with the IT Specialists — and there is no logical reason to believe that anything CSC said could have changed that. An alleged defamation would have nothing to do with those claims nor does SDI explain how it might. SDI's unfortunate attempt to smear CSC should be seen for what it is. It does not and cannot breathe life into the tortuous interference claims.

Worse still, it ignores that legal position that, given the foundation (regardless of merit) upon which SDI asserts its claim (long term relationship, expecting 15% of the "IT business," expecting to continue its relationship with the IT Specialists), CSC's "interference" consisted of informing Exelon that CSC and SDI had failed to reach an agreement and using CC-OPS as a subcontractor for desktop services. The former was true — either SDI would not sign an agreement "for economic reasons" or it demanded its signature back; the latter was necessary to meet the "go live date." (SOF ¶25). The law allows CSC to do just that. "Interference" is justified to protect one's financial interest. *See Bank Computer Network Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 110 Ill. App. 3d 492, 500, 442 N.E.2d 586, 592 (Ill. Ct. App. 1982). Here, that is CSC's interest in meeting the "go live date." SDI's tortious interference claims fail as a matter of law.

**D.     SDI's Breach of Fiduciary Duty Claim Depends on a Non-Existent Partnership**

In its Response, SDI's partnership analysis consists of (i) averring that Pennsylvania law controls, and that the Illinois Statute of Frauds therefore does not apply to defeat the claim; and (ii) trying to distinguish CSC's authority. Neither effort is successful.

SDI never provides a rational basis to assert that CSC and SDI allegedly formed a Pennsylvania partnership. Instead, and consistent with the First Amended Complaint ¶ 8, Illinois law should apply to any alleged partnership between CSC and SDI.[7] As a preliminary matter, SDI never distinguishes the statutory elements set forth under the Illinois Uniform Partnership Act. (Motion, pp. 10 -12). And, for failure to comply with them, there is no partnership. With no partnership, there is no breach of fiduciary duty.

1. **There was no formation of a partnership.**

SDI's critique of the Motion is to try to distinguish three of CSC's cited cases (i) *Parker v. Fergus*, 43 Ill. 437, 1867 WL 5062 (Ill. 1867) (ii) *Snyder v. Dunn*, 265 Ill. App. 3d 891, 638 N.E.2d 744 (Ill. App. Ct. 1994); and (iii) *Maloney v. Pihera*, 215 Ill. App. 3d 30, 573 N.E.2d 1379, (Ill. App. Ct. 1991) because they were not summary judgment cases. *See* Response at pp. 12 – 13. Respectfully, the fact that the opinions rendered in *Parker* came from jury trial and the other two from bench trials does not render those authorities somehow inapposite nor does SDI explain how it might. *Parker* stands for the proposition that, as here, absent an express written agreement (which there is not), there is no partnership if there is no sharing of profits. There was no sharing of profits between CSC and SDI. (SOF ¶39). *Snyder* considers, *inter alia*, whether the sharing of, as here, mere revenue, was "profits" and an indicator of a partnership. *Snyder* concluded on facts similar to this case, that the answer was no. *Maloney* provides numerous indicia of partnership absent an express written agreement – none of which are present in the undisputed facts of this case. *See, e.g.,* SOF ¶¶ 31, 34 – 37.

It is undisputed that CSC and SDI did not file partnership tax returns. (SOF ¶35). There was no partnership name – CSC and SDI at all times remained and held themselves out as

---

[7] *See* Section A *supra* (discussing choice of law).

separate entities. (SOF ¶36). In fact, SDI intended for its employees to wear SDI name tags on-site at Exelon to show SDI's "corporate pride." (SOF ¶36). There was no advertisement of this alleged partnership – no business cards or telephone listings. (SOF ¶37). At most, SDI was going to be a subcontractor for CSC, and SDI knew that because, *inter alia*, the excerpt of Exelon Contract cited by Plaintiff refers to SDI only as an "approved subcontractor." (SOF ¶31). Accordingly, SDI's business would be a portion of CSC's, not Exelon's. (SOF ¶31). Respectfully, there is no partnership, and the Court should grant summary judgment against the breach of fiduciary duty claim.

  **2. No writing to take this alleged partnership out of the Statute of Frauds.**

To be enforceable, agreements that fall within the statute of frauds must be in writing and signed by the party to be charged. *See McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 223 Ill. Dec. 911, 680 N.E.2d 1347, 1351 (Ill. 1997). The writing must contain the agreement's essential terms and "must demonstrate that there has been an agreement as to the essential terms of the contract, evidencing a 'meeting of the minds.'" *Bower v. Jones*, 978 F.2d 1004, 1009 (7th Cir. 1992). None of those writings exist, and they are not before the Court.

  **a. SDI offers nothing in writing.**

The only writings SDI can try to rely upon contain an obvious disclaimer:

> "Regardless of content, this e-mail shall not operate to bind CSC to any order or other contract unless pursuant to explicit written agreement or government initiative expressly permitting the use of e-mail for such purpose." (SOF ¶32).

And, critically, even if the Court looks past the disclaimers and indulges SDI (all the while ignoring SDI's conduct when it had executable agreements in hand), none of the e-mails contain any of the essential terms of a partnership agreement – there is no information in the e-mail that

details the terms and conditions of the partnership, such as the rights, obligations, and financial responsibilities of the parties. (SOF ¶32). Respectfully, the Court should grant the Motion.

### b. SDI offers nothing orally that escapes the Statute.

To the extent SDI alleges that the partnership agreement was an oral agreement, oral contracts are barred by the statute unless the contract is "capable of being fully performed within one year." *Cohn v. Checker Motors Corp.*, 233 Ill. App. 3d 839, 175 Ill. Dec. 98, 599 N.E.2d 1112, 1116 (Ill. App. Ct. 1992). Because the nature of the alleged relationship is five years long in this case involves performance that would necessarily last longer than one year, the Statute of Frauds applies and bars SDI's claim. Accordingly, summary judgment is appropriate.

### E. SDI's Quantum Meruit Claim Still Fails.

SDI starts its Response by mischaracterizing CSC's authority. (Response, p. 14) Although both parties agree to the elements set forth in *Midcoast Aviation, Inc.*, 907 F.2d at 737, that case is a reversal, post-jury trial, not, as SDI states, a reversal of summary judgment.[8] Moreover, Seventh Circuit's reversal is instructive for the instant motion. The issue that engendered the reversal is one of the jury instructions as to damages. *Midcoast Aviation, Inc.*, 907 F.2d at 745. Specifically, the Seventh Circuit did not have to address, as here, whether there was an expectation of payment between Midcoast and GECC for the services. There was such an expectation between Midcoast and GECC. *Midcoast Aviation, Inc.*, 907 F.2d at 743 – 744. Once that threshold was passed, the Court of Appeals thought the measure needed to be "the lower of these two: the economic cost to plaintiff of providing a benefit or the economic

---

[8] *See Midcoast Aviation, In.*, 907 F.2d at 734 ("Trial was held before a jury. Proof was put on and jury instructions were given, all subject to objections. The jury found Midcoast deserving of recovery, and deserving in the amount of $93,988.55. GECC thought the jury never should have received the case: it made a motion for directed verdict at the end of Midcoast's case and a motion for j.n.o.v. after the jury returned its verdict. The court below was of another mind: it denied both motions. It also entered judgment against GECC.").

enrichment of defendant in receiving it." *Midcoast Aviation, Inc.*, 907 F.2d at 747. Tellingly, SDI never asked for either amount because it provided whatever services it did gratuitously.

CSC's authority (the Appellate district for Cook County), *Owen Wagener & Co. v. U.S. Bank*, 297 Ill. App. 3d 1045, 1053, 697 N.E.2d 902, 908 (Ill. App. Ct. 1998) cites SDI's authority and post-dates it. In *Owen Wagner*, the court expressly required the elements set forth in CSC's Motion. Those elements include the fact the services be provided "non-gratuitously." At all times that CSC worked with SDI to prepare for SDI's subcontractor role, any service that SDI provided to CSC was done so gratuitously, at SDI's suggestion, and without any expectation of compensation from CSC. (SOF ¶41). There was no demand for compensation during or after the transition period. (SOF ¶42). SDI never sent an invoice for payment to CSC for any alleged services provided by SDI. (SOF ¶43). SDI's citations to its SAF, ¶¶ 13-15 and CSC's Amended Answer ¶ 91 do not create a fact issue on any of those points. The former have nothing to do with the element of non-gratuitousness; the latter was amended with the Second Amended Answer to deny the allegation. That latter denial removes the alleged admission if it even applied. Accordingly, SDI cannot meet all of the elements of a *quantum meruit* claim, and the claim fails as a matter of law.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, CSC prays that this Court grant its Motion for Summary Judgment and dismiss Counts I through IV of SDI's First Amended Complaint with prejudice. CSC prays for all other relief to which it might be entitled in law or in equity.

Respectfully submitted,

By: /s/ Thomas C. Cronin
Thomas C. Cronin
State Bar No. 6204065

**CRONIN & CO., LTD.**
33 N. Dearborn St., Suite 2350
Chicago, Illinois 60602
Telephone: (312) 201-7100
Telecopier: (312) 201-7101

— AND —

/s/ Charles W. Gameros, Jr., P.C.
Charles W. Gameros, Jr., P.C.
Texas State Bar No. 00796596
Jennifer N. Rauch
Texas State Bar No. 24033108

**HOGE & GAMEROS, L.L.P.**
4514 Cole Ave., Suite 1500
Dallas, Texas 75205
Telephone: (214) 765-6002
Telecopier: (214) 292-8556

**ATTORNEYS FOR COMPUTER SCIENCES CORPORATION**

### CERTIFICATE OF SERVICE

In accordance with the General Order on Electronic Case Filing and subject to the provisions of FED. R. CIV. P. 5(b)(3), the Notice of Electronic Filing that is issued through the court's Electronic Case Filing System will constitute service under FED. R. CIV. P. 5(b)(2)(D) as to all Filing Users in a case assigned to the court's Electronic Case Filing System.

Signed this 29th day of June, 2010,

/s/Thomas C. Cronin
Thomas C. Cronin