# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4008 | **DATE** | 4/1/2011 |
| **CASE TITLE** | System Dvmt Integration vs. Computer Sciences Corp | | |

**DOCKET ENTRY TEXT**

The Court grants in part and denies in part Plaintiff's motion to alter judgment order and memorandum opinion dated September 13, 2010 [111]. Judgment entered on September 13, 2010 is stricken. Case reopened. Status hearing set for 4/20/11 at 8:30 a.m.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Plaintiff, System Development Integration, L.L.C. ("SDI"), has filed a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the Court's September 13, 2010, judgment order and memorandum opinion ("the Opinion"), which granted summary judgment in favor of Defendant, Computer Sciences Corporation ("CSC"). For the following reasons, the Court grants Plaintiff's motion in part and denies it in part.

## BACKGROUND

Plaintiff alleges that Defendant breached the parties' contract and partnership agreement, and interfered with Plaintiff's business. (R. 83.) It contends that CSC induced it to enter into a partnership agreement to obtain a long-term business opportunity with Exelon Corporation, but then terminated the agreement and replaced Plaintiff with one of Plaintiff's competitors. (*Id.*) The Court assumes familiarity with the case, and notes that its September 13, 2010, Opinion addresses the relevant facts in detail. (R. 109 at 6-21.)

In that Opinion, the Court determined that no genuine issue of material fact existed, thus entitling Defendant to summary judgment on Plaintiff's counts of breach of contract, tortious interference with prospective business advantage, breach of fiduciary duty, *quantum meruit*, and equitable estoppel. (R. 109 at 24-39.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

In its Opinion, the Court ruled as follows: With regard to breach of contract, there was no dispute that Defendant never signed the last version of the written agreement that it had sent to Plaintiff. (*Id.* at 24-25.) Although Plaintiff's return of the signed subcontract agreement led certain individuals within Defendant company to believe that the parties had reached an agreement, Plaintiff was unable to contradict evidence that its President, Mr. David Gupta, returned a rate card with the agreement that did not evidence the rate card to which Defendant had agreed. (*Id.* at 25.) The evidence, construed in Plaintiff's favor, revealed that the parties did not create a contract because Plaintiff's "acceptance" did not conform exactly to the "offer," thus violating the mirror-image rule. (*Id.* at 25-26.) Nor did the parties form an oral contract because the agreement, which would have provided for a five-year subcontract between the parties with a possibility of three one-year extensions, could not be performed within a year. (*Id.* at 26-27.) The Statute of Frauds applied because no writing evidenced Defendant's supposed acceptance of Plaintiff's counter offer, which contained new rate cards. (*Id.* at 27.) The doctrine of equitable estoppel did not provide an exception to the Statute of Frauds, as Plaintiff merely proffered conclusory assertions, rather than evidence, that Defendant intended or expected that SDI would act on its representations. (*Id.* at 27-28.)

With respect to Plaintiff's tortious-interference-with-prospective-business-advantage claim, none of Plaintiff's three purported business expectancies was legitimate. First, the evidence did not support Plaintiff's assertion that it had an expectation of a long-term relationship with Exelon. (*Id.* at 29.) Nor did it support Plaintiff's receipt of 15% of Exelon's information-technology business, as Plaintiff never entered into a contract with Exelon and because there was no evidence that Exelon intended Plaintiff to receive 15% of that business. (*Id.*) Finally, Plaintiff had no expectation of continuing its relationships with the twenty-nine IP specialists it had hired and recruited, since Plaintiff rescinded all of their offers after it failed to reach agreement with Defendant. (*Id.*) Plaintiff's arguments to the contrary relied only on facts that demonstrated that it unilaterally decided to recruit and hire IT specialists, that Defendant had stressed the benefits of the Plaintiff-Defendant relationship to Exelon, and that Plaintiff had met with Exelon to discuss the former's potential agreement with Defendant. (*Id.* at 30.) Such evidence did not create a genuine issue of material fact precluding the entry of summary judgment in Defendant's favor. (*Id.*)

Defendant was also entitled to summary judgment on Plaintiff's breach-of-fiduciary-duty claim because the evidence did not support a finding that the parties had entered into a partnership agreement, upon which Plaintiff's claim depended. (*Id.* at 30-34.) The parties agreed that no written, executed partnership agreement between them existed. (*Id.* at 31.) The emails and deposition testimony, which Plaintiff argued evidence a partnership agreement, failed to establish the existence of such an agreement. (*Id.* at 30-34.) The emails' colloquial use of "partnership," and the disclaimer within one that it "should not operate to bind CSC to any . . . contract," did not demonstrate that a partnership actually existed as defined by law. (*Id.* at 33.) The parties did not file a partnership certificate with the County Clerk; nor did they file partnership tax returns. They did not have a partnership name; nor did they intend to share profits—Plaintiff presented no evidence that "15% of the total contract value" constituted the sharing of profits. (*Id.*)

Defendant was further entitled to summary judgment on Plaintiff's *quantum meruit* claim because SDI did not proffer any evidence that any of the services it provided to Defendant was not gratuitous. (*Id.* at 35.)

Finally, the evidence did not support Plaintiff's claim for equitable estoppel. (*Id.* at 36-39.) The Court did not see occasion to answer the question whether equitable estoppel in Illinois law can give rise to an independent cause of action (that is, whether it can be used as a "sword," as well as a "shield," in the famous words of Lord Denning in *Ctr. London Prop. Trust, Ltd. v. High Trees House*, [1947] K.B. 130). Even if Plaintiff could use equitable estoppel offensively, the undisputed facts entitle Defendant to summary judgment because there is no evidence that Defendant misrepresented or concealed material facts. (R. 109 at 36-37.) Specifically, all the relevant alleged misrepresentations cited by Plaintiff concerned promises of future action, which cannot form the basis for equitable estoppel. (*Id.* at 37-38.)

In light of its ruling on summary judgment, the Court entered judgment on September 13, 2010. (R. 110.) Subsequently, Plaintiff filed a motion to alter or amend that opinion and ensuing judgment. (R.111.) The Court grants the motion in part and denies it in part.

# LEGAL STANDARD

Rule 59(e) permits parties to file, within twenty-eight days of the entry of judgment, a motion to alter or amend the judgment. *See* Fed. R. Civ. P. 59(e). Motions under Rule 59(e) serve the limited function of allowing the Court to correct manifest errors of law or fact or to consider newly discovered material evidence. *See Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006). Rule 59(e) "essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Whether to grant a Rule 59(e) motion "is entrusted to the sound judgment of the district court." *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

# ANALYSIS

## I. The Court Grants Plaintiff's Rule 59(e) Motion as to the Breach-of-Contract Claim

The Opinion observed that Plaintiff could base its claim for breach of the subcontract agreement on either a written contract or an oral agreement. (R. 109 at 24-28.) With respect to the potential written contract, the Court found that "SDI did not accept the offer made to it by CSC on September 24, 2008," because "SDI had exchanged the rate cards associated with CSC's proposal for rate cards more favorable to SDI," which constituted a counter-offer that CSC did not accept. (*Id.* at 24-26.) The Opinion also determined that the Illinois Statute of Frauds barred Plaintiff from pursuing a breach-of-contract claim with respect to the parties' September 23, 2008, oral agreement. It rejected SDI's contention that CSC had admitted to the fact of the September 23 oral agreement because "[t]here is no evidence in the record that CSC ever agreed to the counteroffer from SDI that contained new rate cards." (*Id.* at 27.) The Opinion explained that "the uncontroverted evidence only shows that CSC agreed to the proposed subcontract that it sent to SDI." (*Id.*)

At SDI's request, the Court revisits both these determinations.

### A. There Is a Genuine Issue of Material Fact Whether SDI Accepted CSC's September 24, 2008, Offer

The Opinion found that, "after Gupta returned the signed contract on September 24, 2008, he returned a rate card that did not evidence the rate card to which CSC had agreed" and that, "[i]mmediately thereafter, Doyle emailed SDI with the appropriate rate cards." (R. 109 at 25.) On account of this fact, the Court held that "SDI's proposal of different rate cards constituted a rejection of CSC's offer and separate counteroffer which CSC never accepted." (*Id.* at 26.) The Opinion further explained that, "[b]ecause SDI did not accept the offer made to it by CSC on September 24, 2008, there was 'no meeting of the minds' between SDI and CSC." (*Id.*)

In moving for reconsideration, Plaintiff correctly submits that the evidence in the record, construed in the light most favorable to SDI, is inconsistent with this conclusion. (R. 111 at 3-5.) The Court has closely reviewed the record, the briefs, and the Opinion. The following facts are relevant to the motion for reconsideration:

On September 10, 2008, Shelly Cavicchia, on behalf of CSC, emailed SDI a "fully executable" proposed subcontract and pricing schedules that constituted CSC's "best and final offer" of approximately $3.1 million per year for desktop services. (R. 109 at 13-14; R. 87-3 at 129-34.) The rate cards are in the record. (R. 87-3 at 130-34.) As explained in the Opinion, SDI expressed dissatisfaction with the compensation, and so neither party signed the September 10, 2008, subcontract. (R. 109 at 13.)

On September 23, 2008, CSC's Vice President, James Doyle, who had authority to finalize a subcontract with SDI, reached an oral agreement with Plaintiff. (R. 109 at 15.) This conclusion follows, in part, from Mr. Doyle's deposition testimony that he reached a "verbal agreement" on behalf of CSC with David Gupta on that

date.[1]  (R. 87-3 at 101-02.)  He further testified as follows:

> Q. All right.  And just so that our record's clear, under the agreement, you, on behalf of CSC, agreed that SDI would be paid for the specific services according to event-based rates that are set forth in the best and final offer that CSC provided to SDI on September 10, 2008.
> A. Uh-huh.
> Q. Is that right?
> A. Yes.

(*Id.* at 103.)  The "best and final" rates that Defendant provided to Plaintiff on September 10, 2008, as noted, are in the record.  (R. 87-3 at 130-34.)

The next day (September 24, 2008), at 1:13 pm, CSC's Business Development Executive, Joan Burns, sent SDI's David Gupta a "signature page to the Outsourced Services Agreement."  (R. 87-4 at 14.)  Ms. Burns asked Mr. Gupta to "[p]lease sign and send electronic copy to Shelly Cavicchia.  Forward two signature hard copies to Laurie Nupnau."  (*Id.*)

At 1:56 pm, Ms. Burns sent Jim Doyle an IM to the following effect:

> Joan M Burns/A . . . david [*sic*] is going to be signing and sending the electronic signatures shortly with the Schedule C Pricing we submitted in BAFO (9/10).  Want to insure [*sic*] that is you [*sic*] understanding and conversation with Gupta.
> Joan M Burns/A . . . a "yes" would be beautiful
> Jim Doyle/ABD/ . . . Yes
> Joan M Burns/A . . . good, great . . . bye for now

(R. 87-4 at 9.)

At 3:13 pm the same day, SDI's General Counsel, Linda Petty, sent Ms. Burns back "a copy of the CSC/SDI OSA signed by David on behalf of SDI."  (R. 87-4 at 19-28.)  She attached the rate cards as exhibits.  (R. 87-4 at 19-28.)  Ms. Petty stated: "[p]lease note that Exhibit C-3 is the last agreed upon version, rather than the one sent by Shelly in the zip file on September 10th."  (*Id.* at 19.)

Comparing Exhibits C-1 ("Pricing Tables") and C-2 ("Baselines Volumes") that Linda Petty attached to her email of September 24, 2008, to those that Shelly Cavicchia attached to her September 10, 2008, email, the Court notes that they are the same.  (*Compare* R. 87-4 at 19-28 *with* R. 87-3 at 130-34.)  Only the Exhibits C-3 ("Personnel Rates") differ, as Ms. Petty pointed out in her September 24 email.  (*Id.*; R. 87-4 at 19.)  This evidence shows that SDI sent CSC rate cards, the pricing tables and baseline volumes of which correspond to CSC's "best and final offer" of September 10, 2008.

At 3:43 pm, responding to Ms. Petty's email, Ms. Burns sent an email to David Gupta stating: "On behalf of my team I want to thank you for the time, energy and effort to reach an agreement and executed contract."  (R. 87-4 at 30.)  The next morning (September 25, 2008), Mark Theroux of CSC sent Bob Kettell of SDI an email saying: "congratulations on your award, we are all glad this came out with a positive result for both CSC and SDI!"  (R. 87-4 at 38.)

Yet, a few hours later (on September 25, 2008), Mr. Doyle sent Ms. Petty significantly different rate cards.  (R. 87-4 at 58-61.)  Exhibits C-1 ("Pricing Tables") and C-2 ("Baseline Volumes of Events") that Mr. Doyle attached to his September 25 email differ markedly from Exhibits C-1 and C-2 that Ms. Petty had sent the day previously, which were in turn identical to Exhibits C-1 and C-2 of CSC's "best and final offer" of September

---

[1] He also testified with respect to an email from Joan Burns, in which Ms. Burns told him that Mr. Gupta was going to sign the contract with the Schedule C pricing that Defendant had submitted to Plaintiff "in the best and final offer on September 10, 2008."  (R. 87-3 at 99-101.)

10, 2008.  (*Compare* R. 87-4 at 58-61 *with* R. 87-4 at 19-28 *with* R. 87-3 at 129-34.)  Exhibit C-3 to Mr. Doyle's email ("Personnel Rates"), however, was the same as Exhibit C-3 that Ms. Petty had sent the day previously. (*Id.*)

The Opinion did not specifically observe this particular evidence,[2] but instead noted the testimony of Doyle and Nupnau that Gupta had sent back a different rate card than what CSC and SDI had discussed as part of their oral agreement.  (R. 109 at 16.)  Specifically, Doyle testified that "SDI signed the offer, but changed the rate cards," though he could not recall how the rate cards SDI sent differed, if at all, "from the September 10, 2008, best and final offer from CSC."  (R. 87-3 at 111-12.)  Crediting that testimony, the Opinion stated that, after Defendant received Ms. Petty's email of September 24, 2008, "CSC soon realized a disconnect between the parties' oral agreement and SDI's perception of that agreement."  (R. 109 at 16.)  The Opinion concluded that, "shortly after SDI purportedly agreed to the subcontract, CSC learned that SDI had exchanged the rate cards associated with CSC's proposal for rate cards more favorable to SDI.  Immediately thereafter, Doyle emailed SDI with the appropriate rate cards."  (*Id.* at 25.)

Construed in the light most favorable to Plaintiff, however, the record does not support this conclusion.  In light of the evidence that the Pricing Tables and Baselines Volumes that Plaintiff sent CSC on September 24, 2008, were identical to those proposed by Defendant in its "best and final offer" of September 10, 2008, Doyle's and Nupnau's testimony to the contrary reveals that there is a genuine issue of material fact as to whether Plaintiff exchanged the rate cards associated with CSC's proposal for rate cards more favorable to SDI.[3]

---

[2] The Opinion observed that SDI's response to Defendant's motion for summary judgment did not include evidence that contradicted the testimony of Doyle and Nupnau.  (R. 109 at 25.)  Plaintiff's response to CSI's Rule 56.1 statement of undisputed facts, however, provided that "SDI and defendant reached an agreement on September 23, 2008 . . . [which] reflected the rates set forth in the defendant's September 10, 2008, proposed Subcontract plus hourly pricing for special projects, if any."  (R. 86-2 at 10.)  SDI's Rule 56.1 response drew the Court's attention to the pertinent part of Jim Doyle's deposition testimony that the parties reached an oral agreement on September 23, 2008, which incorporated the best and final rates from CSC's September 10, 2008, offer.  (*Id.* at 28-29.)  This deposition testimony appears to contradict Mr. Doyle's other testimony that Gupta replaced the rate cards on September 24, 2008, with rate cards more favorable to SDI.  For that reason, a genuine issue of material fact exists that precludes summary judgment in Defendant's favor on Plaintiff's breach-of-contract claim.

[3] In its Rule 59(e) motion, Plaintiff also appeals to particular aspects of Mr. Gupta's affidavit.  Of course, the Court previously construed Mr. Gupta's affidavits as follows:

> The Court has reviewed Gupta's affidavits. Gupta's affidavits are rife with unsupported claims and assertions and, in many instances, the declarations provide no context to demonstrate that Gupta has personal knowledge of the facts to which he avers. Gupta, for example, asserts in his declaration that he has reviewed "portions" of the Exelon RFP and attaches portions of the Exelon RFP to his declaration. (R. 87, Ex. 1, ¶¶ 3-4.) Gupta, however, makes conclusory assertions regarding provisions of the RFP that are not included in the exhibit to his affidavit without averring that he has reviewed those portions of the document. It is thus unclear whether Gupta has any basis for these unsubstantiated claims. In addition, Gupta makes many assertions regarding representations by CSC employees, and others, that are unsupported by evidence. Statements in affidavits premised on hearsay and not personal knowledge cannot

Because there is a genuine issue of material fact as to whether SDI accepted CSC's September 24, 2008, written offer, the Court grants Plaintiff's motion for reconsideration in relevant part and therefore denies Defendant's motion for summary judgment on Count I of the Amended Complaint ("Breach of Subcontract Agreement").

### B. The Statute of Frauds Does Not Render the Oral Agreement of September 23, 2008, Unenforceable

The Court previously determined that, to the extent Plaintiff contends that the oral agreement of September 23, 2008, amounted to an enforceable contract, the Illinois Statute of Frauds would bar SDI's breach-of-contract claim. (R. 109 at 26.) Plaintiff requests the Court to reconsider this finding.

The Statute of Frauds provides that "[n]o actions shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some person there unto by him lawfully authorized." 740 ILL. COMP. STAT. 80/1.

In Illinois, "[i]t is well settled that the Statute of Frauds may be waived by an acknowledgment of an agreement and the subject matter thereof." *R.J.N. Corp. v. Connelly Food Prods., Inc.*, 529 N.E.2d 1184, 1189 (Ill. App. Ct. 1988) (citations omitted). Plaintiff argued in opposing summary judgment that such waiver existed in the present case. The Opinion acknowledged that SDI cited to the same writings it proffered to satisfy the Statute of Frauds that it did to demonstrate that CSC admitted to a subcontract with SDI. The Court, however, rejected this argument:

> [U]nder Illinois law[,] the admission must be 'unequivocal' to constitute waiver of a statute of frauds defense.' As described above, the uncontroverted evidence only shows that CSC agreed to the proposed subcontract that it sent to SDI. There is no evidence in the record that CSC ever agreed to the counteroffer from SDI that contained new rate cards. Accordingly, there is no 'unequivocal admission' from CSC 'that it was contractually bound.'

(R. 109 at 27) (quotations and citations omitted).

When viewed in the light most favorable to Plaintiff, however, the facts reveal that the parties reached an oral agreement on September 23, 2008, and that the price agreed upon reflected the "best and final" rate that CSC had made on September 10, 2008. (R. 109 at 13, 14.) Mr. Doyle, Defendant's Vice President, who had full authorization to enter into an agreement on behalf of Defendant (*id.* at 15), unambiguously admitted to the fact of this agreement, and its constituent terms, in his deposition. (R. 87-3 at 99-103.) Viewed in the light most favorable to Plaintiff, the following excerpt of Mr. Doyle's deposition testimony constitutes a waiver of the Statute of Frauds because it acknowledges the September 23, 2008, agreement, as well as its subject matter:

---

be used to defeat a motion for summary judgment. *Martin v. Shawano-Gresham Sch. Dist.,* 295 F.3d 701, 713 (7th Cir. 2002). In addition, in his affidavits, Gupta improperly asserts many legal conclusions, including legal conclusions that go to the heart of SDI's claims. This is also improper.

(R. 109 at 4.) On the basis of these significant deficiencies, the Court disregarded numerous contentions, including "assertions regarding the specific terms of the partnership agreement." (*Id.* at 4-5.) In its motion for reconsideration, Plaintiff articulates no reason why the Court should revisit this conclusion. The Court shall continue to disregard the portions of Mr. Gupta's affidavit now relied upon by Plaintiff.

| | | |
|---|---|---|
| Q. | | All right. You, on behalf of CSC, reached a verbal agreement with David Gupta of SDI on September 23, 2008. |
| A. | | Yes. |
| . . . | | |
| Q. | | Under that agreement, CSC agreed that SDI would provide specific desk side, desktop support services, and in return, be paid for those services as set forth in the best and final offer that CSC provided to SDI on September 10, 2008. |
| A. | | The event-based rates, yes. |
| Q. | | All right. And just so that our record's clear, under the agreement, you, on behalf of CSC, agreed that SDI would be paid for the specific services according to event-based rates that are set forth in the best and final offer that CSC provided to SDI on September 10, 2008. |
| A. | | Uh-huh. |
| Q. | | Is that right? |
| A. | | Yes. |

(*Id.* at 102-03.)

The Court therefore grants Plaintiff's Rule 59(e) motion in relevant part and therefore denies Defendant's motion for summary judgment on Plaintiff's breach-of-contract claim.[4]

## II. The Court Made No Manifest Error in Granting Summary Judgment in Defendant's Favor with Respect to Plaintiff's Claim for Equitable Estoppel

Plaintiff moves for reconsideration of the Court's grant of summary judgment in CSC's favor on Plaintiff's equitable-estoppel claim. (R. 111 at 10-14.) To prevail, Plaintiff must present newly discovered evidence or establish that the Court committed a manifest error of law or fact. *See Abcarian v. McDonald*, 617 F.3d 931, 943 (7th Cir. 2010). SDI fails to meet that burden.

In its Opinion, the Court explained that the alleged misrepresentations cited by Plaintiff could not form the basis for a claim for equitable estoppel because they concerned promises of future action. (R. 109 at 37-39.) The Court noted Plaintiff's attempt "to characterize the statements as misrepresentations of [CSC's] 'then-existing state of mind,'" but found that effort to be unpersuasive. (*Id.* at 39.) The Court noted that "SDI does not explain how statements regarding the parties [*sic*] rights and responsibilities under a potential future contract, or a contract between CSC and a third party that was not yet effective, do not relay promises of future action." (*Id.*)

In moving for reconsideration, Plaintiff argues that Defendant made two misrepresentations. First, CSC allegedly misrepresented that Plaintiff would be the exclusive provider of "desktop support" to Exelon. (*Id.* at 11-12.) Second, Defendant supposedly misrepresented that it would establish a flow-down arrangement with SDI. (*Id.* at 12.) Plaintiff contends that Defendant made both of these statements to induce SDI to enter into an exclusive arrangement with it. (*Id.* at 11-12.) Plaintiff submits that these statements are actionable under Illinois law because they were false at the time they were made. (*Id.* at 11.)

---

[4] The Court sees fit to reach this conclusion because SDI, in its opposition to Defendant's motion for summary judgment, argued that Defendant had admitted that it reached an agreement. (R. 85 at 10.) Had Plaintiff failed to raise that argument in its summary-judgment briefing, it would not be appropriate for the Court now to consider it. *See, e.g., Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009) (holding that "normally Rule 59(e) motions may not be used to cure defects that could have been addressed earlier"). Because the Plaintiff originally raised the argument, the Court grants Plaintiff's motion under Rule 59(e). *Ruiz Rivera v. Pfizer Pharms., L.L.C.*, 521 F.3d 76, 82 (1st Cir. 2008).

Plaintiff's argument fails. SDI simply regurgitates its earlier argument in opposition to summary judgment. (R. 99.) Rearguing substantially the same points to the Court, if not inappropriate in the setting of a Rule 59(e) motion, is unlikely to garner favorable results. *Compare Cruz-Claudio v. Garcia Trucking Serv., Inc.*, 639 F. Supp. 2d 213, 215 (D. Puerto Rico 2009) ("A motion for reconsideration is not a proper vehicle to relitigate or rehash matters already decided by the court."); *Zepter v. Dragisic*, 237 F.R.D. 185, 187 (N.D. Ill. 2006) (holding that Rule 59(e) does not provide "an opportunity for a disappointed party to rehash the same arguments that it raised earlier.") (citations omitted); *Kennedy v. Commonwealth Edison Co.*, 252 F. Supp. 2d 737, 739 (C.D. Ill. 2003) ("[I]t is not appropriate to . . . rehash previously rejected arguments in a motion to reconsider."); *California Union Ins. Co. v. Liberty Mut. Ins. Co.*, 930 F. Supp. 317, 318-19 (N.D. Ill. 1996) (observing that "motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments.") (citations omitted) *with Ahmed v. Ashcroft*, 388 F.3d 247, 250 (7th Cir. 2004) (stating in *dicta* that "a motion for reconsideration, even if it raises no new grounds but 'simply rehashes arguments heard at trial,' may be made under Rule 59(e)") (quoting *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.3d 1415, 1419 (9th Cir. 1984)).

Regardless, nothing in Plaintiff's 59(e) motion addresses the fatal flaw in SDI's claim for equitable estoppel, which is that the alleged misrepresentations concern the details of a future contract. (R. 109 at 38.) As explained in the Opinion, such representations of future conduct do not give rise to a claim for equitable estoppel. (*Id.* at 37-38.) For these reasons, the Court denies Plaintiff's Rule 59(e) motion with respect to its claim for equitable estoppel.

### III. Because There Is a Genuine Issue of Material Fact Whether Plaintiff Provided Services to CSC Gratuitously, SDI Is Entitled to Present its *Quantum Meruit* Claim to the Jury

Plaintiff moves under Rule 59(e) to alter or amend the Court's grant of summary judgment to Defendant on SDI's *quantum meruit* claim. (R. 111 at 14-15.) The Opinion held that SDI had failed to present evidence that it had provided any service to Defendant gratuitously. (R. 109 at 35.) In so finding, the Court observed that Plaintiff's citation "to an admission by CSC in its Answer is improper as CSC's Amended Answer superseded its original answer to the Complaint." (*Id.* at n.2.)

Paragraph 91 of SDI's initial complaint alleged, under the heading "Quantum Meruit (Alternative to Counts I & III)," that, "[i]n the event no agreement is deemed to have existed between SDI and defendant for the payment to SDI for its services, then defendant should be obligated to pay SDI for the reasonable value of the services SDI provided to defendant." (R. 1 at 9). In its Answer, CSC admitted the allegations of this paragraph. (R. 8 at 9.) Defendant's First Amended Answer also contained the same admission. (R. 71 at 9.)

If this were still CSC's answer, Defendant clearly would not have been entitled to summary judgment. *See, e.g.*, *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) ("If the answer to the complaint . . . admits liability, the defendant cannot then deny liability on the ground that there is evidence that the admission was mistaken."). In its Second Amended Answer, however, Defendant denied paragraph 91 of Plaintiff's first amended complaint, which was identical to paragraph 91 of SDI's initial complaint. (R. 88 at 9; R. 83 at 21.)

SDI's citation to Defendant's earlier admission was proper. (R. 111 at 14-15.) Beyond the cases that Plaintiff cites (*Pirant v. U.S. Postal Serv.*, No. 03-CV-9383, 2006 WL 3590072, at *4 (N.D. Ill. Dec. 7, 2006); *Davis v. Freels*, 583 F.2d 337, 342 (7th Cir. 1978)), considerable authority establishes that a withdrawn admission in an answer constitutes evidence. *See, e.g.*, *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 245 (1917) ("Defendants' final answers made a complete denial, but in this are contradicted by admissions made in earlier answers and by other and undisputed evidence."); *E. Natural Gas Corp. v. Aluminum Co. of Am.*, 126 F.3d 996, 1001 (7th Cir. 1997) (observing that, "although 'prior pleadings cease to be conclusive judicial admissions, they are admissible in a civil action as evidentiary admissions'") (quoting *Contractor Utility Sales Co. v. Certain-teed Prods. Corp.*, 638 F.2d 1061, 1084) (7th Cir. 1981) (*overturned on other grounds*, *Rissman v. Rissman*, 213 F.3d 381, 385 (7th Cir. 2000)); *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) (holding that defendant's admissions in its initial answers to plaintiff's first and second complaints "create an additional

issue of material fact," even though defendant "later amended its answers to deny this allegation," but noting that "[w]e leave for another day whether an admission in a superceded pleading is evidence that, in and of itself, can defeat a [*sic*] summary judgment"); *White v. Arco/Polymers, Inc.,* 720 F.2d 1391, 1396 n.5 (5th Cir. 1983) ("Admissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions."); *Van Deelen v. Johnson*, No. 05-CV-4039, 2008 WL 4683022, at *5 (D. Kan. Oct. 22, 2008) ("Plaintiff's prior pleadings are, of course, his own prior statements offered against him, and may be introduced as substantive evidence pursuant to Fed. R. Evid. 801(d)(2)."). *But see Nisbet v. Van Tuyl*, 224 F.2d 66, 71-72 (7th Cir. 1955) (holding that superseded pleadings cease to be judicial admissions for the purposes of a motion for summary judgment, but noting that they may be introduced at trial as a prior statement) (*distinguished by Pirant*, 2006 WL 3590072, at *4 (explaining that *Nisbet* is limited to the case of a defendant "attempting to rely on the prior pleading to show the *absence* of a material fact") (emphasis added)).

In light of the preceding case law, Defendant's later-withdrawn admissions constituted evidentiary admissions that support SDI's claim for *quantum meruit*. There is also evidence in the record that Plaintiff engaged in considerable work for the benefit of both parties in preparation for the November 1, 2008, start date. (R. 87-3 at 46-49.) Construing Defendant's admissions and other relevant evidence in the light most favorable to the nonmoving party, the Court concludes that Defendant is not entitled to summary judgment on Plaintiff's *quantum meruit* claim. The Court therefore grants Plaintiff's Rule 59(e) motion in part.

## CONCLUSION

For the preceding reasons, the Court grants in part and denies in part Plaintiff's motion to alter or amend the September 13, 2010, judgment order and memorandum opinion.