# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SYSTEM DEVELOPMENT INTEGRATION, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ) <br> Defendant. ) | No. 09-CV-4008 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court are Plaintiff System Development Integration LLC's ("SDI") motions in limine. For the following reasons, the Court grants SDI's first and second motions in limine and denies SDI's third motion in limine. The Court will address SDI's fourth motion in limine, which is a motion to exclude the expert testimony of Mr. W. Davis Douglass (R. 167), in a separate order.

## BACKGROUND

SDI filed suit against Computer Sciences Corporation ("CSC"), alleging breach of a subcontract agreement, tortious interference with prospective business advantage, breach of fiduciary duty under a partnership agreement, quantum meruit, and equitable estoppel, all arising from CSC's alleged actions in replacing SDI with another company as a minority business partner under a contract with Exelon. (R. 83, First Am. Compl., *passim*.) On September 13, 2010, the Court granted CSC's motion for summary judgment with respect to all five claims and entered judgment in CSC's favor. (R. 109, Order.) On April 1, 2011, the Court granted in part and denied in part SDI's motion to alter or amend the judgment after determining that CSC was

not entitled to summary judgment on SDI's breach of subcontract agreement and *quantum meruit* claims. (R. 116, Order.) Those claims remain pending, and a jury trial is scheduled for September 10, 2012.

## LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In limine rulings avoid delay and allow the parties the opportunity to prepare themselves and witnesses for the introduction or exclusion of the applicable evidence. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Trial courts have broad discretion in ruling on evidentiary issues before trial. *See United States v. Chambers,* 642 F.3d 588, 594 (7th Cir. 2011). Regardless of the Court's initial ruling on a motion in limine, the Court may adjust its ruling during the course of trial. *See Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006). The Court will only grant a motion in limine when the evidence is clearly inadmissable for any purpose. *See Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997); *Thakore v. Universal Mach. Co. of Pottstown, Inc.,* 670 F. Supp. 2d 705, 714 (N.D. Ill. 2009). The moving party bears the burden of establishing that the evidence is not admissible for any purpose. *See Mason v. City of Chicago,* 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009).

## ANALYSIS

In advance of trial, SDI brings four motions in limine. First, SDI moves to strike CSC's supplemental Federal Rule of Civil Procedure 26(a)(1) disclosures and to bar untimely-disclosed

documents and witnesses from trial. Second, SDI moves to bar "irrelevant and prejudicial" evidence regarding SDI's President and Chief Executive Officer, Mr. David Gupta. Third, SDI moves to bar "irrelevant evidence relating to SDI's so-called 'decertification' as a minority- or women-owned business enterprise." Finally, SDI moves to exclude the expert testimony of Mr. W. Davis Douglass. The Court addresses SDI's first, second, and third motions below. The Court will address SDI's motion to exclude CSC's expert in a separate order.

### I. The Court Grants SDI's Motion to Strike CSC's Supplemental Rule 26(a) Disclosures and Bar Untimely-Disclosed Witnesses and Documents

SDI seeks to exclude witnesses and documents that CSC did not disclose or produce until June 12, 2012, more than two years after the close of fact discovery in this case and three months before trial. (R. 165, SDI's Mot. at 1-2.) The documents consist of updated and current revenue information under the Exelon contract. (R. 180, CSC's Resp. at 1-2.) The newly-disclosed witnesses include Bob Trauner, Nancy Stewart, Mary N. Fay, Tia Helberg, "a representative of CC-OPs, Inc," and "a representative of Glencoe Capital."[1] (SDI's Mot. at 1-2.) Mr. Trauner, Ms. Stewart, Ms. Fay, and Ms. Helberg are all "new personnel" at CSC. (CSC's Resp. at 2.) CSC concedes that it neither disclosed the witnesses nor produced the documents at issue until June 12, 2012, but argues that it was justified in doing so because the newly-disclosed information "came into existence only after the April 16, 2010 discovery cut-off date." (*Id.* at 1.)

---

[1] Although these individuals, with the exception of "a representative from Glencoe Capital," do not appear on CSC's proposed witness list, "the Court can conceive of only one reason for [CSC] to identify at this point additional persons with knowledge of its defenses: to attempt to preserve its ability to call them at trial." *See United States ex rel. Hudalla v. Walsh Constr. Co.*, No. 05 C 5930, 2012 WL 182206, at *2-6 (N.D. Ill. Jan. 21, 2012) (granting in part motion to exclude witnesses from testifying at trial where offering party did not disclose them until five weeks prior to trial). Indeed, CSC "suggests no other reason for disclosing them." *See id.*

CSC further argues that its untimely disclosure is justified by its obligation under Rule 26(e) to supplement its Rule 26(a)(1) disclosures and its responses to SDI's document requests.[2]

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(a)(1) requires parties to disclose, among other things, "the name . . . of each individual likely to have discoverable information–along with the subjects of that information–that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A). Pursuant to Rule 26(e)(1)(A), "a party who has made a disclosure under Rule 26(a)–or who has responded to an interrogatory, request for production, or request for admission–must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e)(1)(A).

CSC contends that its late disclosure of witnesses and documents complies with its obligation to supplement under Rule 26(e), but CSC is mistaken. Rule 26(e) requires a party to *timely* supplement its initial disclosures and discovery responses when it learns of new information or information that renders an earlier response inaccurate. Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). It does not, as CSC suggests, allow a party to wait until more than two years after the close of discovery, and after the Court has ruled on summary judgment,

---

[2] In footnote 1 of its response brief, CSC further contends that it produced its supplemental document production pursuant to this Court's order granting SDI's motion to compel. Notably, the Court issued that order more than two years ago. CSC provides no justification for waiting until June 12, 2012 to comply with an order that the Court issued on March 23, 2010. (R. 49.)

to supplement its discovery responses and initial disclosures as trial is approaching. *See Civix-DDI, LLC v. Hotels.com, L.P.*, No. 05 C 6869, 2011 WL 181342, at *3 (N.D. Ill. Jan. 19, 2011) (holding that the defendants' disclosure of new facts ten months after the close of discovery was untimely).

Having determined that CSC's late disclosures and document production do not comply with its obligations under Rule 26(e), the question becomes whether, pursuant to Rule 37(c)(1), CSC's failure to comply is "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). Exclusion of the untimely-disclosed evidence is automatic unless CSC can meet its burden to show that the untimely disclosure was substantially justified or harmless. *Tribble v. Evangelides*, 670 F.3d 753, 759 (7th Cir. 2012) ("Under Rule 37(c)(1), 'exclusion of non-disclosed evidence is automatic and mandatory . . . unless non-disclosure was justified or harmless.'") (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) ("the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified for harmless"). District courts have broad discretion to determine whether CSC's failure to comply with Rule 26(e) is substantially justified or harmless. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 640 (7th Cir. 2005); *David*, 324 F.3d at 857. The Seventh Circuit has indicated that the following factors are relevant to a court's determination:

> (1) the prejudice or surprise to the party against whom the evidence is offered;
> (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to
> the trial; and (4) the bad faith or willfulness involved in not disclosing the
> evidence at an earlier date.

*Tribble*, 670 F.3d at 759 (citing *David*, 324 F.3d at 857).

CSC has not demonstrated that its untimely disclosure was justified. Although CSC generally asserts that the newly-disclosed information "came into existence only after the April 16, 2010 discovery cutoff" (CSC's Resp. at 1), it does not provide any detail regarding when it learned of the new information. Moreover, although it submits that four of the six newly-disclosed witnesses are CSC's "new personnel," it does not provide any information as to when those employees began working for CSC or what relevance their testimony would have to events that took place well before they began working for CSC. Moreover, CSC fails to provide any explanation as to why it could not disclose a representative from CC-OPs, Inc. and a representative from Glencoe Capital until June 12, 2012. This is particularly true with respect to CC-OPs, Inc., which SDI expressly mentions throughout its initial and amended Complaints in this case. (R. 1, Compl. ¶¶ 64-67, 79, 85; R. 83, First Am. Compl. ¶¶ 64-67, 79, 85.)

In addition, CSC makes no attempt to argue that its untimely disclosure was harmless, other than suggesting, without any supporting legal authority, that SDI could not have been "prejudiced or surprised" because CSC disclosed the information more than 90 days prior to trial. (CSC's Resp. at 2.) CSC's assertion is unpersuasive. SDI did not have the opportunity to depose CSC's newly-disclosed witnesses, or to question CSC's witnesses regarding the newly-disclosed financial information. Moreover, SDI's damages expert has already rendered his opinions based on the financial information exchanged during discovery. CSC has filed a motion challenging those opinions, which the Court has set for hearing on August 6, 2012. Altering the financial information on which SDI's expert's opinions rest at this late stage in the litigation would undoubtedly prejudice SDI. *See Civix-DDI*, 2011 WL 181342, at *4 (concluding that the defendant's untimely disclosure of evidence ten months after the close of

discovery and after the parties had exchanged expert reports was prejudicial to the plaintiff). Moreover, if the Court were to allow CSC to use the newly-disclosed evidence, it would need to grant SDI an opportunity to depose additional witnesses and possibly allow SDI's expert to issue a new damages report. This would certainly disrupt the parties' preparation for the impending trial, and would likely result in yet another request for an extension of the trial date for this case, which has been pending for more than three years. Therefore, the Court grants SDI's motion to exclude CSC's untimely-disclosed documents and witnesses.

**II.     The Court Grants SDI's Motion to Bar Evidence Regarding Mr. David Gupta**

SDI seeks to bar "irrelevant and prejudicial" evidence regarding Mr. Gupta. SDI represents that during recent communications, CSC's counsel has threatened to cross-examine Mr. Gupta, SDI's President and Chief Executive Officer, on issues "outside the record." (SDI's Mot. at 3.) It further represents that CSC's counsel would not "elaborate on the specific issues or topics," but that they "proposed (for the first time) on June 20, 2012 that CSC may call 'representatives of Glencoe Capital' to testify at trial." (*Id.*) An affiliate of Glencoe Capital purchased an equity interest in SDI in 2008. (*Id.*) Although it is not entirely clear from SDI's motion the precise scope of the evidence SDI seeks to exclude, it appears that SDI moves to exclude evidence relating to Mr. Gupta's and SDI's political donations to various political candidates, including former Illinois Governor Rod Blagojevich, and SDI's receipt of various contracts related to the State of Illinois. (*Id.*) Additionally, SDI moves to bar evidence relating to Glencoe Capital's allegedly improper payments to former Chicago businessman and political fundraiser, Mr. Tony Rezko. (*Id.*) Both Mr. Rezko and former Governor Blagojevich have been

convicted of federal crimes and are serving time in federal prison. SDI argues that the Court should exclude such evidence because it is irrelevant and unfairly prejudicial.

The Court agrees that the evidence is irrelevant and that, even if it were relevant, its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 401; *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012) ("Rule 401 defines relevant evidence as evidence having 'any tendency to make a fact more or less probable than it would be without the evidence' and where 'the fact is of consequence in determining the action.'") (quoting Fed. R. Evid. 401); Fed. R. Evid. 403; *Boros*, 668 F.3d at 909 ("Rule 403 permits a district court to 'exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence.'") (quoting Fed. R. Evid. 403).

CSC argues that this evidence is relevant to Mr. Gupta's credibility and his "community status," which it argues SDI put "at issue by highlighting the effect SDI alleges it had on bringing about the events that have given rise to this suit." (CSC's Resp. at 3.) CSC further asserts that, in its First Amended Complaint, SDI "made numerous statements about how Mr. Gupta's status and relationship with SDI executives was critical in helping CSC secure the Exelon contract." (*Id.*) CSC, however, fails to point to any specific allegations in SDI's First Amended Complaint in support of its assertion. A review of SDI's First Amended Complaint indicates that SDI alleged that "SDI and its senior officers and directors have had various successful relationships with Exelon and its senior officers, and ComEd and its senior officers" and that CSC "knew that SDI and its unique resources, abilities, and relationships would be critically important to Exelon." (First Am. Compl. ¶¶ 12, 18.) Contrary to CSC's assertions,

these general statements do not open the door to CSC to explore Mr. Gupta's and SDI's relationships, if any, with Mr. Rezko and former Governor Blagojevich, which have no relevance to the claims in this case.

CSC's argument that the evidence at issue is relevant to Mr. Gupta's credibility also falls flat. Mr. Gupta's political contributions to the former Governor of Illinois do not render him more or less credible, nor does his company's receipt of contracts from the State of Illinois. Moreover, Glencoe Capital's ties to Mr. Rezko also have no bearing on Mr. Gupta's credibility. Indeed, those issues have nothing to do with the issues for trial. Even if the evidence had some minimal probative value, the risk of unfair prejudice substantially outweighs any such value. *See Boros*, 668 F.3d at 909 ("'[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote.'") (quoting *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008)). Specifically, admitting such evidence runs the risk that the jury may infer from Mr. Gupta's and SDI's relationships with convicted criminals that he is a "bad" person. *See United States v. Chambers*, 642 F.3d 588, 594 (7th Cir. 2011) ("Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.") (citations omitted). The Court accordingly grants SDI's motion to exclude this evidence.[3]

---

[3] In its response, CSC grossly mischaracterizes SDI's motion as seeking to "exclude any and all testimony relating to or evidence of . . . David Gupta's questionable credibility" and to "prevent CSC from asserting the affirmative defense of unclean hands." (CSC's Resp. at 3-4.) The Court does not interpret SDI's motion nearly as broadly as does CSC.

**III. The Court Denies SDI's Motion to Bar Evidence Relating to SDI's Alleged MWBE Decertification**

SDI moves to bar "evidence relating to SDI's so-called 'decertification' as a minority- or women-owned business enterprise" ("MWBE") pursuant to Federal Rules of Evidence 401, 402, and 403. Specifically, SDI seeks to exclude evidence or argument at trial that SDI misrepresented its MWBE status to CSC, and that it had lost its MWBE certification and qualification at the time of the Exelon contract award. (*Id.*) Because SDI has not shown that such evidence is inadmissible for any purpose, the Court denies SDI's motion. *See Mason*, 631 F. Supp. 2d at 1056.

CSC intends to introduce evidence relating to SDI's MWBE status in support of its unclean hands and impossibility of performance affirmative defenses. In particular, CSC contends that "SDI is prevented from obtaining equitable relief as [it] made material misrepresentations to CSC, including misrepresentations regarding SDI's status as a minority owned business and regarding SDI's alleged business relationships with Exelon." (R. 88, Sec. Am. Ans. ¶ 118.) Further, CSC contends that "SDI's failure to maintain its status as a MWBE provider . . . made it impossible for SDI to serve as a MWBE provider under the Exelon contract." (*Id.* ¶ 121.)

SDI has failed to show that such evidence is irrelevant to the issues at trial. SDI argues that the Court should grant its motion because CSC's contentions–namely, that SDI misrepresented its MWBE status to CSC and that SDI had lost its MWBE status by the time of the Exelon contract award–are false and are not supported by the evidence. (SDI's Mot. at 4; R. 190, SDI's Reply at 6-7.) That, however, is an issue of fact for the jury to decide at trial, not one on which the Court may rule in a motion in limine. *See Hill v. City of Chicago*, No. 06 C 6772,

2011 WL 3205304, at *4 (N.D. Ill. July 28, 2011) (noting that "motions in limine are designed to narrow evidentiary issues for trial, not resolve factual disputes or weigh evidence") (citation omitted and internal quotation marks omitted). If, as SDI asserts, those facts are undisputed, SDI would have had a strong basis to move for summary judgment on CSC's affirmative defenses. Notably, SDI did not do so, and it cannot bootstrap such a motion to its motions in limine. *See* 21 Charles A. Wright & Kenneth W. Graham, Jr., *Fed. Prac. & Proc.* § 5037.18 (2d ed. 2005); *Ty Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124, at *11 (N.D. Ill. Apr. 7, 2006) (denying motion in limine where it "essentially [sought] summary judgment" on a substantive issue, explaining that while the party's argument "may be borne out, it is for the jury to decide whether [the plaintiff] has proven its case"); *see also ABC Beverage Corp. & Subsidiaries v. United States*, No. 07-cv-51, 2008 WL 5424174, at *2 (W.D. Mich. Dec. 4, 2008) (recognizing that motions in limine are not substitutes for dispositive motions) (citing cases); *Mavrinac v. Emergency Med. Ass'n of Pittsburgh*, No. 04-1880, 2007 WL 2908007, at *1 (W.D. Pa. Oct. 2, 2007) ("motions in limine are inappropriate vehicles to seek a final determination with respect to a substantive cause of action and should not be used as a substitute for a motion for summary judgment"). Because CSC's affirmative defenses remain viable, evidence relating to SDI's MWBE status is relevant. *See* Fed. R. Evid. 401.

SDI has also failed to show that the probative value of the evidence regarding its MWBE status is "substantially outweighed" by the danger of unfair prejudice or by the tendency to mislead or confuse the jury. *See Boros,* 668 F.3d at 909 (emphasizing that because "most relevant evidence is, by its very nature, prejudicial . . . evidence must be *unfairly* prejudicial to require exclusion") (citations and internal quotation marks omitted; emphasis in original); *United*

11

*States v. Ozuna*, 561 F.3d 728, 738 (7th Cir. 2009) (a "district court may exclude collateral or irrelevant evidence where its tendency to mislead and confuse the jury substantially outweighs its probative value"). The crux of SDI's argument is that CSC's assertions regarding SDI's MWBE status will mislead and confuse the jury because those assertions are false and because, in its view, CSC cannot point to an express provision of the Exelon contract requiring SDI to have a MWBE certification. (SDI's Mot. at 5-6.)

SDI's argument is unpersuasive. As explained above, the issue of whether CSC's contentions are true is for the jury to decide based on the evidence the parties present at trial. *See Hill*, 2011 WL 3205304, at *4. In response to SDI's argument that CSC cannot point to any provision of the Exelon contract requiring SDI to have a MWBE certification, CSC cites to specific portions of the record that it asserts "clearly show[] that the Excelon [sic] contract required a 51% qualified minority owned business to provide 15% of the CSC work." (CSC's Resp. at 7.) It is not appropriate for the Court to weigh evidence or make factual determinations regarding the parties' claims in deciding a motion in limine. *Hill*, 2011 WL 3205304, at *4. Again, SDI could have, but did not, move for summary judgment on CSC's affirmative defenses. SDI will have the opportunity at trial to rebut CSC's evidence and make whatever arguments it deems appropriate in response to the evidence and arguments that CSC sets forth in this regard. SDI's motion to exclude evidence of SDI's MWBE status is denied.

**CONCLUSION**

For the reasons explained above, the Court grants SDI's first and second motions in limine and denies SDI's third motion in limine. The Court will address SDI's motion to exclude CSC's expert in a separate order.

DATED: July 19, 2012

ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge