**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SYSTEM DEVELOPMENT INTEGRATION, LLC, ) | | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09-CV-4008 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court are Defendant Computer Sciences Corporation's ("CSC") motions in

limine. For the following reasons, the Court grants the motions in part and denies them in part,

as further explained below.

**BACKGROUND**

Plaintiff System Development Integration LLC ("SDI") filed suit against CSC, alleging

breach of subcontract agreement, tortious interference with prospective business advantage,

breach of fiduciary duty under a partnership agreement, quantum meruit, and equitable estoppel,

all arising from CSC's alleged actions in replacing SDI with another company as a minority

business partner under a contract with Exelon. (R. 83, First Am. Compl., *passim*.) On

September 13, 2010, the Court granted CSC's motion for summary judgment with respect to all

five claims and entered judgment in CSC's favor. *See Sys. Dev. Integration, LLC v. Computer

Sci. Corp.*, 739 F. Supp. 2d 1063 (N.D. Ill. 2010). On April 1, 2011, the Court granted in part

and denied in part SDI's motion to alter or amend the judgment after determining that CSC was

not entitled to summary judgment on SDI's breach of subcontract agreement and quantum meruit

claims. *See System Dev. Integration, LLC v. Computer Sciences Corp.*, No. 09-cv-4008, 2011 WL 1311903 (N.D. Ill. Apr. 1, 2011). Those claims remain pending, and a jury trial is scheduled for September 10, 2012.

## LEGAL STANDARD

### I.     Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In limine rulings avoid delay and allow the parties the opportunity to prepare themselves and witnesses for the introduction or exclusion of the applicable evidence. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). They also avoid wasting the jury's time with evidentiary fights.

Trial courts have broad discretion in ruling on evidentiary issues before trial. *See United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). The Court will only grant a motion in limine when the evidence is clearly inadmissable for any purpose. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Thakore v. Universal Mach. Co. of Pottstown, Inc.*, 670 F. Supp. 2d 705, 714 (N.D. Ill. 2009). The moving party bears the burden of establishing that the evidence is not admissible for any purpose. *See Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009).

Regardless of the Court's initial ruling on a motion in limine, the Court may adjust its ruling during the course of trial. *See Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006). Moreover, a "pretrial ruling denying a motion in limine 'does not

necessarily mean that all evidence contested by the motion will be admitted at trial.'"  *Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 2277851, at *1 (N.D. Ill. June 18, 2012) (quoting *Hawthorne Partners. v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1401 (N.D. Ill. 1993)).

## II.    Federal Rules of Evidence 401, 402, and 403

Pursuant to Federal Rule of Evidence ("Rule") 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401; *Boros*, 668 F.3d at 907. "Rule 402 provides the corollary that, with certain exceptions, '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not admissible.'"  *Boros*, 668 F.3d at 907.  Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Civ. P. 403; *Boros*, 668 F.3d at 909.

## ANALYSIS

In advance of trial, CSC has brought fifteen motions in limine.  (R. 161.)  On June 26, 2012, the Court denied CSC's third and fourth motions in limine without prejudice, denied CSC's fifth and twelfth motions in limine, and granted CSC's thirteenth, fourteenth, and fifteenth motions in limine by agreement.  (R. 164.)  Currently pending before the Court are motion in limine numbers 1, 2, 6, 7, 8, 9, 10, and 11.  The Court addresses each in turn.

Before addressing the substance of CSC's motions, however, the Court denies CSC's request that the Court "warn and caution all witnesses to follow" its orders regarding CSC's motions in limine.  (R. 175, CSC's Mem. at 1.)  "It is the job of counsel to ensure that witnesses

are properly prepared so that they will not . . . volunteer information and to ask carefully framed questions" such that the witnesses' answers will not "yield otherwise inadmissible evidence or exceed the limits imposed on that testimony by prior rulings." *Thakore*, 670 F. Supp. 2d at 716. The Court fully expects counsel to properly prepare and advise their respective witnesses of the Court's orders, and to ensure that the witnesses do not violate those orders.

## I.      SDI's Two Remaining Claims

SDI's claims for breach of the alleged subcontract and, in the alternative, quantum meruit remain pending and will be tried before a jury. Illinois law applies to both claims. *See Sys. Dev. Integration*, 739 F. Supp. 2d at 1080. To succeed on its claim for breach of contract, SDI must prove "(1) the existence of a valid and enforceable contract; (2) substantial performance of the contract; (3) breach of the contract; and (4) resultant damages." *Id.* To prove its claim for quantum meruit, SDI must show "(1) it performed a service to benefit CSC; (2) it performed this service non-gratuitously; (3) CSC accepted this service; and (4) no contract existed to prescribe payment of this service." *Id.* at 1086.

## II.      Motion in Limine No. 1:  Eliminated Claims

CSC seeks to exclude "any references to the claims or damages originally sought by SDI but which have been eliminated from this trial by the Court's Summary Judgment Orders of September 13, 2010 and April 1, 2011." (CSC's Mem. at 1.) Specifically, CSC states that "[t]his exclusion would include any references to a 'partnership' between CSC and SDI, to CSC and SDI being 'partners' and to SDI being entitled to 15% or some other portion of the Exelon contract proceeds. It additionally would bar any references to or evidence of SDI's claims of tortious interference, equitable estoppel or breach of fiduciary duty." (*Id.*) CSC argues that

because the Court has already determined that the dismissed claims cannot survive, or that no genuine dispute as to any material fact exists, as applicable, "it would be improper" for SDI to refer to those claims and allegations in front of the jury. In support of its motion, CSC relies on Federal Rules of Evidence 402 and 403. The Court grants in part and denies in part CSC's motion.

First, the Court grants, by agreement, CSC's motion to the extent it seeks to bar SDI from presenting evidence or argument regarding its dismissed claims for breach of fiduciary duty, tortious interference, and equitable estoppel. (R. 185, SDI's Opp. at 3.) Second, the Court grants CSC's motion to the extent it seeks to preclude SDI from arguing or offering evidence that CSC agreed to pay it 15% of the Exelon contract proceeds. As the parties are aware, the Court's September 13, 2010 summary judgment order found that the evidence in the record *did not* support SDI's repeated assertions that CSC agreed to pay SDI 15% of the Exelon contract proceeds. *See Sys. Dev. Integration*, 739 F. Supp. 2d at 1071 n.3, 1072 n.7, 1073 n.9. As such, allowing SDI to argue to the jury that CSC agreed to pay SDI 15% of the Exelon contract proceeds would inappropriately circumvent this Court's ruling and the facts of this case. This Order, however, does not prohibit either party from referencing or introducing the portion of the subcontract that references SDI's opportunity to "provide services representing fifteen percent (15%) or more of the Services contemplated" under the Exelon contract. (R. 185-4, Excerpts of Subcontract, § 1.2(i).)

The Court further grants CSC's motion to the extent it seeks to bar SDI from referencing the existence of a partnership agreement in the legal sense, given the Court's finding on summary judgment that no partnership agreement between CSC and SDI existed. *See Sys. Dev.*

*Integration*, 739 F. Supp. 2d at 1085-86. The Court denies CSC's motion, however, to the extent it seeks to preclude SDI from introducing evidence of the nature of the parties' relationship. Although the Court has dismissed SDI's claim for breach of fiduciary duty, evidence regarding the nature the parties' relationship is nonetheless relevant to SDI's quantum meruit claim.[1] *See, e.g., Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 741 (7th Cir. 1990) (affirming district court's admission of evidence during trial involving quantum meruit claim under Illinois law where evidence related to the character of the relationship between the plaintiff and the defendant, recognizing that "the character of [the defendant's] relationship with [the plaintiff] was the key to determining the unjustness of [the defendant's] enrichment"); *cf. Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 481-82 (7th Cir. 2009) (applying Wisconsin quantum meruit law, explaining that the district court erred in excluding evidence "relating to the parties' negotiations" because "[t]he parties' course of conduct, their actions, and their failed negotiations all bear on whether [the plaintiff] reasonably expected compensation" for the services rendered); *see also Thakore*, 670 F. Supp. 2d at 716 (explaining that even where an issue or claim has been decided at summary judgment, "if the evidence is also relevant to a claim or issue that remains in the case, the evidence is admissible for that limited purpose"). This evidence is relevant, for example, to whether SDI provided services to CSC with the expectation that it would be compensated for those services and whether CSC's retention of any

---

[1] CSC argues that SDI has pursued its quantum meruit theory as an alternative to its breach of contract claim and not its claim based on the alleged partnership agreement. SDI, however, specifically alleged in its First Amended Complaint that it brought the quantum meruit claim "in the alternative to Count I [breach of subcontract] and Count III [breach of fiduciary duty]." (First Am. Compl. ¶ 88.) Therefore, CSC has had ample notice of the basis for SDI's quantum meruit theory.

such services is unjust under the circumstances.  The jury will be required to determine both of

those issues of fact if it reaches deliberations on SDI's quantum meruit claim.  As such, the

Court grants in part and denies in part CSC's first motion in limine.  CSC is free to make

appropriate objections to this evidence at trial, at which time the Court will consider them in

context.  *See Allstate Ins. Co. v. St. Anthony's Spine & Joint Institute*, No. 06-cv-7010, 2011 WL

4382567, at *4 (N.D. Ill. Sept. 20, 2011) (denying portion of motion in limine, stating that the

party could make objections to specific testimony at trial).

III.     **Motion in Limine Number 2:  The Parties' Prior Agreements**

CSC seeks to bar "[a]ny evidence relating to any agreement between SDI and CSC prior

to the alleged oral agreement claimed by SDI in September 2008."  (CSC's Mem. at 2.)  In

support of its motion, CSC argues that this evidence is irrelevant to the pending claims and that

"[a]ny such references or evidence would be confusing, misleading and prejudicial to CSC

where their introduction no doubt would be designed to suggest wrongdoing, artifice, and

duplicity by CSC, and unfairly prejudice CSC."  (*Id.*)  In response, SDI argues that the history of

the parties' negotiations and the scope of the parties' various agreements are relevant to CSC's

affirmative defense that there was "no meeting of the minds" and to SDI's quantum meruit claim

because it tends to show that "SDI performed services with the expectation that it would be

compensated."  (SDI's Opp. at 3.)  The Court agrees with SDI.

Even if the Court rules that CSC may not assert an affirmative defense of "no meeting of

the minds" in light of its failure to plead such a defense in its Answer, this evidence is

nonetheless relevant to SDI's quantum meruit claim because it relates to the character of SDI's

relationship with CSC and whether SDI reasonably expected compensation for its services.  *See,*

*e.g., Midcoast Aviation*, 907 F.2d at 741 (evidence related to the character of the relationship between the plaintiff and the defendant is relevant to quantum meruit claim); *Linquist Ford*, 557 F.3d at 481-82 (same).[2]  CSC's motion is denied.

## IV.  Motion in Limine Numbers 6 and 10: Lost Opportunities and SDI's Potential Other Partner

CSC seeks to bar "[a]ny testimony or documents relating to [SDI's] 'lost opportunities.'" (CSC Mem. at 3.)  It argues that SDI's "lost opportunities" are not a proper measure of damages under either of its claims and that the references would be confusing, misleading, and prejudicial.  (*Id.* at 3-4.)  Relatedly, CSC seeks to exclude "[a]ny testimony or documents referencing other potential companies with which SDI claims it may have entered a contract because such references are not relevant and would be based entirely on speculation."  (*Id.* at 6-9.)  SDI responds that this evidence is relevant to its claim for quantum meruit–specifically, that it is relevant to the jury's evaluation of the "cost" to SDI and the "benefit" to CSC from SDI's services.  (SDI's Opp. at 8.)  SDI also argues that such evidence is relevant to its breach of subcontract claim because "lost opportunity" damages are recoverable under restitution and reliance damages theories in breach of contract actions.  (*Id.* at 9.)

### A.    The Evidence Is Not Relevant to SDI's Breach of Subcontract Claim

SDI's argument that the evidence is relevant to its breach of contract claim fails because SDI has not indicated, either in its proposed jury instructions or in its damages statement in the

_____

[2]  CSC's reliance on the portion of the Court's September 13, 2010 summary judgment order, in which the Court determined that SDI's claim for equitable estoppel failed, is unhelpful to its argument.  SDI does not seek to introduce evidence of the parties' prior agreements to support its equitable estoppel claim.  Rather, it intends to offer such evidence in support of its quantum meruit claim.

parties' final pretrial order, that it seeks damages based on restitution or reliance theories in this case. (*See* R. 171, Proposed Jury Instructions at SDI's Proposed Instruction No. 28 (listing direct damages, defined as "the amount of gain that SDI would have received it both of the parties had fully performed the contract," and incidental damages, defined as "the costs that were reasonably spent by SDI in responding to CSC's breach of the contract"); R. 155, Proposed Pretrial Order at 10.)

### B. The Evidence Is Relevant to SDI's Quantum Meruit Claim

#### 1. Quantum meruit recovery under Illinois law[3]

Under Illinois law, the equitable theory of quantum meruit "is founded on the implied promise of a recipient of services to pay for such valuable services, as otherwise the recipient would be unjustly enriched." *Carlton at the Lake, Inc. v. Barber*, 401 Ill. App. 3d 528, 340 Ill. Dec. 669, 928 N.E.2d 1266 (Ill. App. Ct. 2010). Quantum meruit literally means "as much as he deserves." Black's Law Dictionary (9th ed. 2009). It is a quasi-contractual theory "in which no actual agreement between the parties occurred, but a duty is imposed [by the law] to prevent injustice." *Hayes Mech., Inc. v. First Indus., L.P.*, 351 Ill. App. 3d 1, 8-9, 285 Ill. Dec. 599, 812 N.E.2d 419 (Ill. App. Ct. 2004). "The prevention of unjustness is the fundamental aspect of the doctrine of quasi-contracts." *Id.* (citation omitted).

---

[3] The parties' disagreement regarding the appropriate measure of recovery in quantum meruit claims under Illinois law relates not only to CSC's motions in limine numbers 6 and 10, but also to CSC's motion to exclude SDI's damages expert, Michael Mayer, and the parties' proposed jury instructions. Accordingly, the Court addresses that issue here, with the intent that it will not only resolve the parties' instant dispute, but will provide guidance to the parties in meeting and conferring with respect to their jury instruction disputes and in their other preparations for trial.

SDI contends that the proper measure of recovery for a quantum meruit claim under Illinois law is either "the economic cost to plaintiff of providing a benefit or the economic enrichment of defendant in receiving it." (SDI's Opp. at 7 (citing *Midcoast Aviation*, 907 F.2d at 745).) CSC, on the other hand, argues that the measure of recovery is "the reasonable value of the plaintiff's services conferred upon the defendant."[4] (CSC's Mem. at 4.)

The Seventh Circuit and the Illinois Appellate Courts have articulated somewhat different standards for the proper measure of recovery in a quantum meruit action under Illinois law.[5] *Compare Bernstein & Grazian, L.P. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 979, 341 Ill. Dec. 913, 931 N.E.2d 810 (Ill. App. Ct. 2010) (the measure of recovery for quantum meruit claim is "the reasonable value of services non-gratuitously rendered") (citing *K. Miller Constr. Co. v. McGinnis*, 394 Ill. App. 3d 248, 255, 332 Ill. Dec. 857, 913 N.E.2d 1147 (Ill. App. Ct. 2009)); *Hayes Mech.*, 351 Ill. App. 3d at 9 ("In a quantum meruit action, the measure of recovery is the reasonable value of work and material provided . . . ."); *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 606, 243 Ill. Dec. 740, 724 N.E.2d 49 (Ill. App. Ct. 1999) ("Under a theory of *quantum meruit*, the measure of recovery is the reasonable value of the plaintiff's services.") (citations omitted); *Rohter v. Passarella*, 246 Ill. App. 3d 860, 866, 186 Ill. Dec. 807, 617 N.E.2d 46 (Ill. App. Ct. 1993) ("The common law adopted the term [quantum meruit] to describe a cause of action which seeks to recover the reasonable value of services

---

[4] CSC has proposed a jury instruction that differs slightly from this standard: "the measure of recovery is the reasonable value of the work and material, if any, that SDI provided." (CSC's Proposed Jury Instruction No. 36.)

[5] CSC's reliance on *Lindquist*, 557 F.3d 409, for the appropriate measure of recovery is misplaced because in that case, the Seventh Circuit applied Wisconsin law.

which have been nongratuitously rendered, but where no contract exists to prescribe exactly how much the renderer should have been paid."), *with Midcoast Aviation*, 907 F.2d at 745 ("[t]he proper measure of quantum meruit recovery . . . is generally the lower of these two: the economic cost to plaintiff of providing a benefit or the economic enrichment of defendant in receiving it") and *Production Process Consultants, Inc. v. Wm. R. Hubbell Steel Corp.*, 988 F.2d 794, 797 (7th Cir. 1993) (affirming dismissal of quantum meruit claim on the ground that the plaintiff failed to prove that the defendant received "any direct pecuniary gain" from the plaintiff's services, observing that the plaintiff's recovery must be limited to the "'amount by which [the defendant] has been benefitted.'") (quoting Restatement of Restitution, § 1, Comment e).[6]

In *Midcoast Aviation*, the defendant, on appeal, argued that the district court had erred in instructing the jury that the measure of recovery on the plaintiff's quantum meruit claim is "the reasonable value of the services and materials provided by the plaintiff." 907 F.2d at 742, 744. The defendant contended that "the measure of damages in quasi-contract is not the reasonable value of the services and material provided by the plaintiff, but the reasonable value of the benefit conferred on the defendant." *Id.* at 744. The Seventh Circuit explained that the defendant was, in part, correct because "[i]f a defendant is not enriched it cannot be prosecuted successfully on a theory of quasi-contract." *Id.* It further explained that:

> Unjust enrichment lies at the heart of quasi-contract; if a defendant is not enriched, it hardly can be unjustly enriched. Similarly then, if a defendant is

---

[6] Notably, in *Production Process*, the plaintiff, on appeal, requested the Seventh Circuit to vacate the lower court's judgment in favor of the defendant, or, in the alternative, to "reverse with instructions to determine the reasonable value of [the plaintiff's] services." 988 F.2d at 795. The Seventh Circuit instead affirmed the lower court's decision.

enriched but disgorges the value of that enrichment to the plaintiff, the purpose of a suit in quasi-contract is spent. Additional damages would serve only to unjustly impoverish the defendant for a benefit never received. Thus, damages in quasi-contract cannot be more than the amount of the benefit conferred upon the defendant.

*Id.*

The Seventh Circuit recognized that "there are cases that state the measure of quantum meruit recovery as the reasonable value of the services performed by plaintiff." *Id.* (citing cases). It recognized "three explanations this phenomenon." *Id.* First, it explained that

in many cases a reasonable way to value the benefit conferred on the defendant is to value the services and materials provided by the plaintiff. This is because the cost of the services and materials provided is roughly equivalent to the value of the benefit conferred, and the cost of the services and materials provided is susceptible to proof at trial, whereas the benefit conferred is not.

*Id.* The court, however, observed that under the particular facts of the case before it, "the cost or value of the services and materials provided by [the plaintiff] is an unreasonable way to value the benefit conferred on [the defendant]" because the two were not "roughly equivalent." *Id.* There, the plaintiff had performed services that benefitted both the defendant and another entity. The Seventh Circuit recognized that making the defendant pay plaintiff for a benefit that the plaintiff did not confer on the defendant would "be unfair." *Id.*

The Seventh Circuit also explained that "some courts may have concluded that the reasonable value of the services and materials provided by the plaintiff is less than the value of the benefit conferred on the defendant." *Id.* In those circumstances, "a measure of damages based on the value of the services and materials provided by the plaintiff makes sense" because "[i]t is less than the value of defendant's enrichment, yet it satisfies plaintiff for the work it has done." *Id.* at 744-45.

The final explanation is that "many cases . . . confuse the doctrine of a contract implied in fact with that of a contract implied in law." *Id.* at 745. Under a contract implied in fact, "the measure of the plaintiff's recovery should be the reasonable value of the services and material it provided, i.e., 'reasonable compensation for the work done.'" *Id.* (citing *Board of Highway Comm'rs v. City of Bloomington*, 253 Ill. 164, 97 N.E. 280 (1911)). For a contract implied in law, however, "the measure of the plaintiff's recovery is, at most, the benefit retained by the defendant." *Id.* (citing *Board of Highway Comm'rs*, 97 N.E. at 284-85). "This is because the action is based not on an agreement between the defendant and the plaintiff, but on the equity of the unjust enrichment." *Midcoast Aviation*, 907 F.2d at 745. Ultimately, the Seventh Circuit concluded that

> the correct measure for quantum meruit recovery 'is expressed by the amount which the court considers defendant has been unjustly enriched at the expense of plaintiff.' In general, the amount of money awarded to the plaintiff should be an amount that makes the defendant's enrichment 'just.' The defendant's enrichment would be just if the plaintiff received the full value of his work. At that point, the plaintiff would have no unjustness to complain about, even if the defendant remains somewhat enriched. It would also be just if the defendant disgorged the entire amount of enrichment received. Without being enriched, the defendant cannot be unjustly enriched. The proper measure of quantum meruit recovery, then, is the lower of these two: the economic cost to plaintiff of providing a benefit or the economic enrichment of defendant in receiving it.[7]

*Id.* In light of its decision, the Seventh Circuit reversed and remanded the case for a new trial on damages.

Although the Illinois Supreme Court has not addressed the Seventh Circuit's holding regarding the proper measure of quantum meruit damages in *Midcoast Aviation*, it has

---

[7] The Seventh Circuit appears to equate the "full value" of the plaintiff's work with the "economic cost to plaintiff of providing a benefit." *See id.*

recognized that it is appropriate to consider the benefit conferred on the defendant in determining damages for a quantum meruit claim. *See In re Estate of Callahan*, 144 Ill.2d 32, 41, Ill. Dec. 339, 578 N.E.2d 985 (1991) (acknowledging that "[o]ne of the factors to be considered in measuring the value of the services received [under a quantum meruit theory] is the benefits that have resulted to the client from the attorney's representation" and that '[i]n some cases, it is possible for someone to receive services and yet not be enriched in a tangible way at all"). The parties have not cited, and the Court has not found, any Illinois Supreme Court case disavowing the Seventh Circuit's interpretation of Illinois law in *Midcoast Aviation*.[8] As such, the Court is bound to follow *Midcoast*.[9] As the Seventh Circuit teaches:

> In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not [it] agree[s] with them, so district judges must follow the decisions

---

[8] It is true that Illinois Appellate Courts have, after *Midcoast Aviation*, continued to express that the appropriate measure of recovery is "the reasonable value of services." *See, e.g., Bernstein & Grazian*, 402 Ill. App. 3d at 979; *Hayes Mech.*, 351 Ill. App. 3d at 9; *Fieldcrest Builders*, 311 Ill. App. 3d at 606. These cases, however, are not necessarily inconsistent with *Midcoast Aviation*, wherein the Seventh Circuit expressly recognized that, in certain cases, "a measure of damages based on the value of the services and materials provided by the plaintiff makes sense" and that a "defendant's enrichment would be just if the plaintiff received the full value of his work." 907 F.2d at 744-45.

[9] The Court recognizes that the Seventh Circuit has, since *Midcoast Aviation*, indicated that the reasonable value of services is the appropriate measure of recovery in actions for quantum meruit. *See Confold Pacific, Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 958 (7th Cir. 2006) (observing that in actions for quantum meruit, "the plaintiff is entitled to the market value of his services rather than to the benefit that he conferred on the defendant, which might be much greater . . . .") (applying Wisconsin law); *Indiana Lumbermens Mut. Ins. Co. v. Reins. Results, Inc.*, 513 F.3d 652, 658 (7th Cir. 2008) (observing that, under Indiana law, "benefit conferred" is not the "usual measure of market value, which is the value that courts use to calculate the relief due a plaintiff whose claim of quantum meruit succeeds" and that "[i]t is no surprise that when courts award quantum meruit they base the award on the market price of the good or service in question"). Those decisions, however, did not apply Illinois law and are therefore not binding on this Court.

14

of [the Seventh Circuit] whether or not they agree. A decision by a state's supreme court terminates the authoritative force of [the Seventh Circuit's] decisions interpreting state law, for under *Erie* [its] task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past. But decisions of intermediate state courts lack similar force; they, too, are just prognostications.

*Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004); *see also Davis v. Jewish Vocational Serv.*, No. 07 C 4735, 2010 WL 1172537, at *6 (N.D. Ill. Mar. 17, 2010) (refusing to follow Illinois Appellate Court decisions, instead determining that "[i]n the absence of a superseding decision by the Illinois Supreme Court, this Court is bound by Seventh Circuit precedent") (citing *Reiser*, 380 F.3d at 1029)). Accordingly, in this case, the "correct measure for quantum meruit recovery is the amount which the court considers defendant has been unjustly enriched at the expense of plaintiff," which is "generally the lower of these two: the economic cost to plaintiff of providing a benefit or the economic enrichment of defendant in receiving it."[10] *Midcoast Aviation*, 907 F.2d at 745 (citations and internal quotation marks omitted).

### 2.    Relevance of "lost opportunities" to quantum meruit recovery

SDI argues that evidence of lost opportunities to "partner" with other bidders is relevant to the jury's determination of SDI's economic cost in providing services to CSC. SDI's argument is unconvincing. It does not cite to any authority indicating that it is appropriate for the finder of fact to consider SDI's "lost opportunities" as a component of its economic cost in providing services to CSC, and the Court has also not found any authority to support this

---

[10] Although it relies on *Midcoast Aviation* extensively throughout its brief in opposition to CSC's motion and in support of its proposed jury instructions, SDI conspicuously fails to acknowledge that the Seventh Circuit held that the proper measure of recover is *the lower of* the plaintiff's economic cost or the defendant's economic enrichment.

proposition.  The section of *Midcoast Aviation* that SDI cites in support of its argument does not

discuss the measure of recovery under a quantum meruit theory, but rather discusses whether the

plaintiff could properly assert a quantum meruit claim against the defendant under the particular

facts of that case.  *Midcoast Aviation*, 907 F.2d at 739 (explaining that the general rule that

courts will not impose quasi-contractual liability on a third party did not apply because the third

party "not only benefitted from [the plaintiff's] work, but enticed [the plaintiff] to undertake the

work in the first place and then refused to see [the plaintiff] paid").

SDI also argues that such evidence is relevant to the benefit or value that CSC received

from SDI's services.  SDI, however, does not provide sufficient information regarding what

evidence it intends to offer on this issue or how it is relevant to the jury's determination of the

benefit, if any, that CSC received.  Although SDI states that it intends to offer evidence

demonstrating that it provided exclusive services to CSC at CSC's request, SDI does not explain

how this evidence demonstrates what the incremental value is, if any, of its exclusive services.

As such, there does not appear to be a reasonable basis from which the jury may determine the

incremental value of SDI's exclusive services versus its non-exclusive services.  Without such a

reasonable basis, the probative value of SDI's evidence of exclusivity is minimal, and

introducing that evidence risks confusing the issues at trial, misleading the jury, and wasting

time.  *See generally United States v. Hosseini*, 679 F.3d 544 (7th Cir. 2012) (finding that the

district court did not abuse its discretion in excluding "marginally relevant" evidence where its

"probative value was substantially outweighed by the risk of confusing the issues, misleading the

jury, and creating myriad collateral inquiries . . . into the facts of the underlying transactions").

The Court accordingly grants CSC's motion without prejudice.  SDI may file a supplemental

submission on or before August 10, 2012, setting forth the basis from which the jury may be able to determine the incremental benefit to CSC, if any, from SDI's exclusive services.[11]

## V.     Motion in Limine Numbers 7, 8, and 11: Value and Profits of CSC's Contract with Exelon

CSC's seventh and eighth motions in limine seek to bar all evidence referencing the "value" of the Exelon contract to CSC and CSC's "profit" from that contract pursuant to Rules 401, 402, and 403.  CSC's eleventh motion in limine seeks to exclude all references to CSC's size, gross or net profits or revenues" pursuant to Rules 401 and 403.[12]

CSC argues that its revenues and profits from the Exelon contract are irrelevant because they do not relate to either of SDI's remaining claims.  It further asserts that introduction of such evidence would mislead and confuse the jury.  SDI argues that CSC's profit margins on the services that SDI was to provide (i.e., the difference between Exelon's payment to CSC and what CSC allegedly agreed to pay SDI) is relevant to CSC's defense that it never agreed to the rates that SDI alleges it did.  (SDI's Opp. at 12.)  SDI represents that it "expects that the evidence will show that the rates CSC agreed to pay SDI under the Subcontract Agreement provided CSC with a positive profit margin on SDI's services under the Exelon Contract."  (*Id.*)  SDI further asserts

---

[11]  To the extent the Court allows SDI to introduce evidence related to its lost opportunities, CSC's Rule 602 objections to such evidence are more appropriately addressed at trial, particularly because the Court is not privy to, and therefore has not reviewed, SDI's proposed evidence in this regard.  *See Thakore*, 670 F. Supp. 2d at 717-18 (denying motion in limine to exclude evidence that the defendant argued was based on speculation, explaining that "the defendant may make appropriate objections to any evidence that under the Rules of Evidence would permit impermissible speculation by the jury, for neither hypothesis nor speculation is a substitute for proof of damages - or anything else.") (citations omitted).

[12]  SDI has agreed that it will not present evidence at trial regarding CSC's general, company-wide profits and revenues.  (SDI's Opp. at 12.)  Accordingly, the remaining portion of CSC's eleventh motion in limine is largely duplicative of its seventh and eight motion in limine.

that CSC's profits under the Exelon contract are relevant to the jury's determination of the "value of the services provided by SDI and the benefits obtained by CSC." (*Id.*)

To the extent the jury will need to determine the benefit CSC received from SDI's bid and transition-related services, the overall value of the Exelon contract to CSC is relevant to put SDI's bid-related work into context. CSC does not sufficiently explain how evidence of its profits from the Exelon contract is confusing or unduly prejudicial under Rule 403. As such, CSC has failed to demonstrate that CSC's profits and revenues under the contract with Exelon are clearly inadmissible for any purpose, *Jonasson*, 115 F.3d at 440, and the Court therefore denies CSC's motion to exclude this evidence.

## VI.     Motion in Limine Number 9: Rates Exelon Paid to CSC Under the Exelon Contract

CSC's ninth motion in limine seeks to bar all evidence "referencing the comparison of the rates paid by Exelon to CSC with the rates offered to SDI by CSC" under Rules 401 and 403. (CSC's Mem. at 4.) CSC argues that such evidence is irrelevant to both of SDI's remaining claims. Specifically, it argues that in light of the Court's finding that no partnership agreement existed between SDI and CSC, SDI was never entitled to a percentage of the rates that Exelon paid to CSC and therefore those rates are irrelevant and would confuse the jury. (*Id.* at 5.) CSC asserts that the only relevant rates are those in the alleged subcontract between CSC and SDI. (*Id.*) Further, CSC argues that the evidence is prejudicial to CSC because SDI may attempt to use it to paint CSC as a bad actor who gained more profit than it shared with its alleged subcontractor. (*Id.* at 6.) SDI responds that this evidence is relevant to rebutting CSC's meeting of the minds defense—specifically, CSC's argument that it never agreed to the rates that SDI alleges it did, as set forth in CSC's September 10, 2008 "best and final" offer. (SDI's Opp. at

10-11.)  SDI asserts that the rates are relevant to showing the jury that those rates are well within the rates that "CSC had internally acknowledged as being authorized and acceptable."  (*Id.*)  SDI further argues that the rates are relevant to the jury's determination of the "value of the services provided by SDI and the benefits obtained by CSC."[13]  (*Id.*)

The Court agrees with CSC that the specific rates Exelon paid to CSC for the services SDI was to provide is irrelevant to SDI's quantum meruit claim.  SDI does not seek to recover for services provided to Exelon, *see* First Am. Compl. ¶ 89, and indeed SDI does not contend that it performed any services reflected in Exelon's rates to CSC, i.e., desktop services.  Rather, the services for which SDI seeks to recover relate to work it allegedly performed in an attempt to win the CSC bid and to prepare for delivering services to Exelon.  (*Id.*)  Therefore, the specific rates Exelon agreed to pay CSC for services provided to CSC has no relevance to the benefit, if any, that CSC received from SDI's bid-related and preparatory work.

The Court agrees with SDI, however, that to the extent CSC asserts its "no meeting of the minds" affirmative defense at trial, the rate information is relevant.  The record indicates that CSC intends to argue to the jury that it would have been unprofitable for CSC to agree to the rates that SDI alleges it did, which it contends supports a finding that there was no meeting of the minds on the terms of the subcontract agreement.  (R. 167-1, Expert Report of W. Davis Douglass ¶¶ 55-56.)  If CSC advances this theory at trial, evidence of the rates that Exelon paid to CSC will be relevant to determining whether there is any evidentiary support for CSC's

---

[13]  SDI takes issue with CSC's assertion that the subcontract negotiations "were not based upon a certain percentage of the Exelon contract."  (*Id.* at 11.)  The Court need not address that argument, however, as it is inconsequential to CSC's motion.  As explained above, SDI is precluded from arguing at trial that the parties agreed that SDI would be entitled to 15% of CSC's profits from the Exelon contract.

defense.[14]  *See* Fed. R. Evid. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").  Accordingly, CSC has not met its burden of showing that the evidence is inadmissible for any purpose.  *See Jonasson*, 115 F.3d at 440.

Moreover, CSC's largely conclusory assertion that such evidence would cause the jury to view CSC as a bad actor who earned more profit than it shared with its subcontractor is unconvincing.  *See Boros*, 668 F.3d 901, 907 (7th Cir. 2012) (emphasizing that because "most relevant evidence is, by its very nature, prejudicial . . . evidence must be *unfairly* prejudicial to require exclusion") (citations and internal quotation marks omitted; emphasis in original); *Wielgus*, 2012 WL 2277581, at *5 (conclusory statements are insufficient to meet the high burden of excluding evidence in a motion in limine).  CSC's motion is denied, without prejudice.  CSC may assert objections to specific evidence at trial, when the Court will be better-equipped to determine the relevancy of the evidence in context.  SDI may only introduce this evidence if CSC asserts its "no meeting of the minds" affirmative defense.

---

[14]  The Court has not yet determined whether CSC may assert the "no meeting of the minds" affirmative defense at trial in light of CSC's failure to plead it in its Answer.

## CONCLUSION

For the reasons set forth above, the Court (1) grants in part and denies in part CSC's first motion in limine; (2) denies CSC's second motion in limine; (3) grants CSC's sixth and tenth motions in limine without prejudice; and (4) denies CSC's seventh, eighth, ninth and eleventh motions in limine.

DATED: August 3, 2012                    ENTERED:

_____
AMY J. STUEVE
United States District Court Judge