# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4008 | **DATE** | 8/10/2012 |
| **CASE TITLE** | SDI vs. CSC | | |

**DOCKET ENTRY TEXT**

The Court grants in part and denies in part SDI's motion to exclude Mr. Douglass's expert testimony [167].

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Plaintiff System Development Integration LLC's ("SDI") has filed a motion to exclude the expert testimony of Defendant Computer Sciences Corporation ("CSC") damages expert, Mr. W. Davis Douglass, pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and Federal Rule of Evidence 702. For the following reasons, the Court grants in part and denies in part SDI's motion.

## BACKGROUND

SDI filed suit against CSC, alleging breach of subcontract agreement, tortious interference with prospective business advantage, breach of fiduciary duty under a partnership agreement, quantum meruit, and equitable estoppel, all arising from CSC's alleged actions in replacing SDI with another company as a minority business partner under a contract with Exelon. (R. 83, First Am. Compl., *passim*.) On September 13, 2010, the Court granted CSC's motion for summary judgment with respect to all five claims and entered judgment in CSC's favor. (R. 109, Order.) On April 1, 2011, the Court granted in part and denied in part SDI's motion to alter or amend the judgment after determining that CSC was not entitled to summary judgment on SDI's breach of subcontract agreement and quantum meruit claims. (R. 116, Order.) Those claims remain pending, and a jury trial is scheduled for September 10, 2012.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

CSC intends to offer Mr. Douglass's damages testimony at trial to rebut the opinions of SDI's damages expert, Mr. Michael Mayer. In his expert report, Mr. Douglass first addresses Mr. Mayer's opinions regarding damages resulting from CSC's alleged breach of fiduciary duty under a partnership agreement (Part A). Next, he addresses Mr. Mayer's opinions regarding SDI's damages for CSC's alleged breach of the subcontract agreement (Part B). Lastly, he opines on Mr. Mayer's opinions regarding SDI's alleged quantum meruit damages (Part C).

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in Daubert[.]" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)); *see also Lapsley v. Xtek, Inc.*, --- F.3d ----, 2012 WL 3055865 (7th Cir. July 27, 2012) ("The purpose of [the Daubert] inquiry is to vet the proposed testimony under Rule 702's requirements that it be "based on sufficient facts or data," use "reliable principles and methods," and "reliably appl[y] the principles and methods to the facts of the case.") (quoting Fed. R. Evid. 702)). Whether to admit expert testimony rests within the discretion of the district court. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); *Lapsley*, 2012 WL 3055865 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'") (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis*, 561 F.3d at 705.

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011).

District courts employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Myers v. Illinois Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811–12 (7th Cir. 2012). "The goal of Daubert is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

## ANALYSIS

SDI argues that the Court should exclude Mr. Douglass's damages opinions because they are unreliable, usurp the role of the jury by resolving credibility issues, improperly proffer legal conclusions, and improperly advocate for CSC. (R. 167, SDI's Mot. at 2.)

## I. Mr. Douglass is Qualified to Testify as an Expert in This Case

SDI does not challenge Mr. Douglass's qualifications to testify as an expert in this case, but the Court nevertheless summarizes them. Mr. Douglass is an Associate Director with Navigant Consulting (PI) LLC ("Navigant"). (R. 167-1, Expert Report of W. Davis Douglass ("Douglass Report") ¶ 1.) Mr. Douglass received a bachelor of science degree from the United States Military Academy at West Point, a masters in management and regulation of risk from the London School of Economics, and a masters of business administration from The University of Chicago. (*Id.* ¶ 6.) Among his other qualifications, he is a Certified Public Accountant and a Chartered Financial Analyst. (*Id.*) Mr. Douglass has worked on "numerous complex litigation matters that have required extensive accounting, economic, and financial analysis, as well as detailed analysis of hard-copy information and electronic data." (*Id.* ¶ 7.) In either a dispute or business consulting context, he has provided assistance on breach of contract and breach of fiduciary duty matters, among others. (*Id.*) Prior to working at Navigant, Mr. Douglass worked for Charles River Associates, where he performed consulting services. (*Id.* ¶ 5.)

## II. Mr. Douglass's Opinions Regarding Quantum Meruit and Partnership Agreement

Because this Court has excluded Mr. Mayer's opinions regarding SDI's quantum meruit claim and SDI's damages for breach of fiduciary duty under a partnership agreement, Mr. Douglass's rebuttal opinions on those claims are irrelevant and unnecessary. As such, the Court grants CSC's motion to exclude those opinions.

## III. Mr. Douglass's Breach of Subcontract Opinions

Mr. Douglass criticizes Mr. Mayer's breach of subcontract opinions. First, Mr. Douglass opines that Mr. Mayer bases his damages calculations on inaccurate factual assumptions. He reasons that although Mr. Mayer derived the figures he used in his lost profits calculations from the subcontract, evidence in the record indicates that CSC did not agree to those rates (i.e., the parties did not enter into a contract). (Douglass Report ¶ 55 ("evidence indicates that these rates . . . were sent in error to SDI and did not reflect CSC's agreed upon rates in its contract negotiations with SDI" and "the instant messages among CSC employees state that $3 million revenue to SDI . . . would result in CSC losing money on that portion of its contract with Exelon"; ¶ 56 ("The conversations among CSC employees in the instant messages . . . indicate that the revenue CSC was willing to give to SDI was $2.2 million").) Mr. Douglass does not proffer an alternate damages theory or calculation, nor does he opine as to errors or criticisms of Mr. Mayer's methodology or conclusions, all of which are permissible. Instead, he summarizes evidence that is favorable to CSC and attempts to "sort out possible conflicting testimony or to argue the implication of those inconsistencies," which is not the role of an expert witness. *See Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011) ("[E]xpert witnesses are not allowed to sort out possible conflicting testimony or to argue the implication of those inconsistencies. That is the role of the lawyer, and it [is] for the jury to draw its own conclusions from the testimony it hears."). This is not proper expert testimony, and thus the Court excludes his opinions in paragraphs 54 through 56. *See Jordan v. City of Chicago*, No. 08 C 6902, 2012 WL 254243, at *8 (N.D. Ill. Jan. 22. 2012) (citing *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) (noting that "[u]nless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403"); *Aponte v. City of Chicago*, No. 09–CV–8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011) ("[E]xpert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony.").[1]

---

[1] Moreover, as the Court explained in its Order regarding CSC's motion to exclude Mr. Mayer, it is entirely appropriate for a damages expert in a breach of contract action to assume that a contract exists.

Next, Mr. Douglass contends that Mr. Mayer "commits a significant logical inconsistency" between his opinion regarding SDI's breach of fiduciary duty damages and SDI's breach of contract damages by not allocating a profit margin to CSC in the former, but allocating a profit margin to CSC in the latter. (Mayer Report ¶ 57.) Because the Court has excluded Mr. Mayer's breach of fiduciary duty damages opinions, it is unclear whether CSC intends to proffer this criticism at trial. To the extent it does, Mr. Douglass may testify regarding his criticisms of Mr. Mayer's approach to accounting for profit margin in his breach of subcontract damages opinion.

Mr. Douglass also criticizes Mr. Mayer's opinion on the grounds it assumes that CSC and Exelon would extend their contract past the initial five-year term. (Douglass Report ¶ 58, incorporating contract duration analysis in Section VII.A.) Specifically, he opines that Mr. Mayer did not account for the possibility that CSC and Exelon might not have extended the contract and that Exelon could have reduced the services CSC provides. (*Id.* ¶¶ 36-38.) He contends that Mr. Mayer should have "included this risk in his analysis." (*Id.* ¶ 37.) Mr. Douglass's critiques of this methodology are sufficiently reasoned, and they will assist the jury in determining the appropriate weight to give Mr. Mayer's testimony. *See Myers*, 629 F.3d at 644 (explaining that the district court must "determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'") (citation omitted). Accordingly, he may testify regarding these opinions at trial. To be clear, however, neither parties' expert may opine as to the likelihood that CSC and Exelon would have extended their contract, which falls squarely outside both Mr. Douglass's and Mr. Mayer's scope of expertise.

Finally, Mr. Douglass criticizes Mr. Mayer's choice of date for determining damages. As explained in the Court's Order regarding CSC's motion to exclude Mr. Mayer, the proper date for determining damages is an issue of law for the Court. As such, neither expert may opine as to the appropriate date for determining damages.

## IV. CSC May Not Call A Representative of Mr. Douglass's Firm At Trial

In its proposed witness list for trial, CSC indicated that it intends to call Douglass "or a representative of his firm" to testify at trial. (R. 155, Final Pretrial Order at 5.) CSC has provided no explanation why it cannot call Mr. Douglass at trial, and it has not disclosed any other expert, let alone another expert from Mr. Douglass's firm. Accordingly, CSC may not call a representative of Mr. Douglass's firm to testify at trial.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part SDI's motion to exclude Mr. Douglass's expert testimony.